WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko (RPL 1553)
33 Washington Street
Newark, New Jersey 07102-5003
Tel: (973) 624-0800
Fax: (973) 624-0808
*robert.lesko@wilsonelser.com*
Attorneys for Defendant American General Life
Insurance Company

| | |
|---|---|
| DEBBY MENDEZ,<br>　　　　　　Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br>　　　　　　Defendant. | : UNITED STATES<br>: DISTRICT COURT<br>: DISTRICT OF NEW JERSEY<br>:<br>: Civil Action No. 09-cv-01155<br>:<br>: **ANSWER AND**<br>: **COUNTERCLAIM**<br>: |

Defendant, American General Life Insurance Company ("American General" and/or Defendant"), having its principal place of business at 2929 Allen Parkway Houston, Texas 77019, by and through its undersigned counsel as an for an Answer to the Complaint, say:

## THE PARTIES

1.　American General is without knowledge or information to sufficient to form a belief as to the truth of the allegations contained in the corresponding paragraph of the Complaint, and therefore leave plaintiff to her proofs.

2.　American General admits that it maintains its primary place of business at 2929 Allen Parkway, Houston, Texas and is authorized to do business in the State of New Jersey. Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

3.　American General admits that it issued Renewable Level Benefit Term

835166.1

Life Policy YM00399650 (hereinafter the "Policy") insuring the life of Jorge Mendez (hereinafter "Mendez") effective December 6, 2006 which Policy speaks for itself. Except as expressly admitted herein, and to the extent that the allegations of the corresponding paragraph of the Complaint are inconsistent with or contrary to the terms and provisions of the Policy, American General denies the allegations contained in the corresponding paragraph of the Complaint.

4.   American General admits that the Policy was issued effective December 6, 2006.  By way of further response, Defendant states the Policy was terminated on February 6, 2007.  Except as expressly admitted herein, Defendant denies the allegations contained in the corresponding paragraph of the Complaint.

5.   American General admits that it received a Reinstatement Application dated April 20, 2007.  Defendant further admits that on April 26, 2007, Jeffrey Greenberg of PGA Financial Group, forwarded Mendez's Reinstatement Application to American General.  Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

6.   American General admits that the Reinstatement Application required Mendez to provide the name of and address of his personal physician.  American General further admits that in response to this question on the Reinstatement Application, Mendez responded "Dr. Alterman, SM Group Berkley Hts. Diamond Hill Rd."  American General further admits that the Reinstatement Application required Mendez to provide the date, reasons, findings and treatment of last visit.  American General further admits that Mendez failed to disclose full and complete information in response to this question. American General further admits that as part of the original application for the Policy,

835166.1

Part B Life Insurance Application asks an applicant the name and address of each proposed Insured's personal physician(s). American General further admits that in response to this question, Mendez wrote "Dr. Alterman Summit Med Group Diamond Hill Rd. Berkley Heights N.J." Part B Life Insurance Application also asks the applicant to provide the name of insured, date, reason, findings and treatment of last visit. Defendant further admits that in response to this question, Mendez wrote "@ year no recall." Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

8.[sic] American General admits the allegations contained in the corresponding paragraph of the Complaint.

9.    American General admits that Mendez resubmitted pages 1 and 2 of the Reinstatement Application, responding to the Question #4, Section II-B, stating "2/18/06 physical/no findings all normal J.M. 5/7/07." American General further admits that, in reliance upon the information provided by Mendez in the Reinstatement Application, American General reinstated the Policy on May 21, 2007. Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

10.    American General admits that Debby Mendez was named as the primary beneficiary of the Policy. Defendant further admits that Debby Mendez completed a Proof of Death Claimant's Statement dated March 18, 2008, which she submitted to American General. Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

11.    American General admits that by letter dated September 23, 2008

American General advised Debby Mendez of its decision to rescind the Policy due to material misrepresentation contained in the Reinstatement Application, which letter speaks for itself. Except as expressly admitted herein and to the extent that the allegations are inconsistent with or contrary to said letter, American General denies the allegations contained in the corresponding paragraph of the Complaint.

12. American General denies the allegations contained in the corresponding paragraph of the Complaint.

13. American General denies the allegations contained in the corresponding paragraph of the Complaint.

14. American General denies the allegations contained in the corresponding paragraph of the Complaint.

WHEREFORE, American General demands judgment in its favor dismissing the Complaint with prejudice and awarding American General reasonable attorney fees, costs of suit and such other relief to which American General may be entitled and/or which the Court deems to be equitable and just.

## **AFFIRMATIVE DEFENSES**

1. The Complaint fails to state fact sufficient to constitute a cause of action for which relief can be granted.

3. The Complaint should be dismissed on the doctrine of equitable estoppel.

5. The Complaint should be dismissed based upon the doctrine of unclean hands.

6. If and to the extent that American General failed to perform any obligation owing to plaintiff, which Defendant categorically denies, such performance was

835166.1

prevented or made impossible as a result of acts or omission of plaintiff and/or other third parties.

7. The Complaint should be dismissed because the Policy is void *ab initio* and unenforceable by virtue of fraud in the inducment by the insured.

8. The Complaint should be dismissed because the Policy is void *ab initio* and unenforceable by virtue of a mutual mistake of material fact and/or a unilateral mistake of facts on the part of American General accompanied by fraud committed by the insured and/or the plaintiff.

10. The Complaint should be dismissed in its entirety in accordance with the public policy of the State of New Jersey on account of fraudulent conduct in connection with the reinstatement application for the Policy.

11. Plaintiff's claims should be dismissed because failure of one or more of the conditions precedent to coverage contained with in the Policy, including but not limited to: the requirement that there has been no change in the health of the proposed insured that would change the answers to any questions in the reinstatement application.

12. American General presently has insufficient knowledge or information on which to form a belief as to whether they may have additional, yet unstated affirmative defenses. American General reserves the right to assert additional affirmative defenses in the event discovery or further investigation indicates that asserting additional affirmative defenses would be warranted.

## COUNTERCLAIM

By way of Counterclaim against plaintiff and by and through the undersigned counsel, American General hereby alleges and says:

1. Plaintiff Debby Mendez is an adult resident, and upon information and belief, a citizen of the State of New Jersey, having her residence at 42 Maple Street, Chatham, New Jersey, 07928.

2. Plaintiff Debby Mendez is named the primary beneficiary of the Policy and has made claim for payment of the life insurance benefits under the Policy.

3. Plaintiff seeks payment of benefits under the Policy on account of the death of the insured, Jorge Mendez (hereinafter "Mendez" and/or "decedent").

4. The policy provides a level term death benefit of $1.2 million in the event of Mendez's death, subject to all of the terms and conditions contained within the Policy.

5. During a routine investigation following receipt of plaintiff's claim for benefits, American General learned for the first time that Mendez had made material misrepresentations in his Reinstatement Application for the Policy concerning his health and medical history, misrepresentations upon which American General reasonably relied in agreeing to reinstate the Policy.

6. Based on the material misrepresentations, American General denied plaintiff's claim and rescinded the Policy.

7. Plaintiff retained counsel to refute the claim denial and rescission and has filed this legal action against American General to recover benefits under the Policy.

8. A controversy exists between and among the parties hereto requiring a declaration from this Court as to the rights and obligations of the parties.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.00.

10. Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claim occurred within this district and because one or more of the defendants resides within this district.

## **MISREPRESENTATIONS**

11. On September 26, 2006, the decedent Jorge Mendez submitted a Term Insurance Application to American General Life Insurance Company seeking issuance of a life insurance policy in the amount of $1.2 million.

12. Part A of the application was executed in Livingston, New Jersey. Part B of the application was executed in Chatham, New Jersey.

13. On December 6, 2006, American General issued Renewable Term Level Benefit Term Life Policy No. YM00399560 (the "Policy") insuring the life of Mendez.

14. On April 15, 2007, American General contacted Mendez informing him that the Policy was terminated due to a failure to pay premiums. American General informed Mendez to contact American General for information regarding reinstatement of the Policy.

15. On April 20, 2007, Mendez executed a Reinstatement Application for Life Insurance, which was submitted to American General on April 26, 2007.

16. The Reinstatement Application was executed in Chatham, New Jersey.

835166.1

17. As part of the Reinstatement Application, Mendez was obligated to provide true and complete answers to questions relating to his health history.

18. Question #3 on the Reinstatement Application under Section II-B asked, "Name and address of your personal physician."

19. In response to this question, Mendez wrote "Dr. Alterman SM Group Berkley Hts. Diamond Hill Rd." Mendez did not identify any other personal physicians.

20. Question #4 on the Reinstatement Application under Section II-B asked, "Date, reason, findings and treatment at last visit."

21. Mendez did not provide a response to this question.

22. Question # 1(a) on the Reinstatement Application under Section II-C: Medical Information asked, "Have you ever been diagnosed or been treated for, or consulted a licensed healthcare provider for: High blood pressure, diabetes, cancer, tumor, epilepsy, asthma, emphysema, or any disorder of the heart of the blood vessels?"

23. In response to this question, Mendez checked "no."

24. Question # 1(b) on the Reinstatement Application under Section II-C: Medical Information asked, "Have you ever been diagnosed or been treated for, or consulted a licensed healthcare provider for: Disease or disorder of the stomach, intestines, liver, pancreas, lungs, kidneys, urinary tract, brain, prostate, lymph glands, or reproductive organs?"

25. In response to this question, Mendez checked "no."

26. Question # 3 on the Reinstatement Application under Section II-C: Medical Information asked, "Are you currently taking any medication, treatment or therapy or under medical observation?"

27. In response to this question, Mendez checked "no."

28. Question # 4 on the Reinstatement Application under Section II-C: Medical Information asked: "Do you have any symptoms or knowledge of any other condition not disclosed above?"

29. In response to this question, Mendez checked "no."

30. By executing the Reinstatement Application, Mendez acknowledged and agreed that American General would rely upon the information provided in the Reinstatement Application in determining whether to issue the Policy, and he promised that the information contained in the application was true and complete, as follows:

> I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application shall be the basis for: (1) any policy issued; or (2) changes to the existing policy as requested on this application. I understand that any misrepresentation contained in this application and related forms and relied upon by the Company may be used to reduce or deny a claim or void the policy if it is within the contestable period and if such misrepresentations materially affects the acceptance of this risk. I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there is no change in the health of any proposed insured that would change the answers to any questions in the application.

31. On May 2, 2007, American General contacted Mendez and advised him that American General had received his request to reinstate the Policy, but that American General was unable to complete the request until Mendez answered Question # 4 on Page 2, Section II-B. American General asked Mendez to use ink then initial and date his changes.

32. Question #4 on Page 2, Section II-B asks for the date, reason, findings,

835166.1

and treatment at Mendez's last visit to his personal physician.

33. On or about May 7, 2007, Mendez answered Question #4 on Page 2, Section II-B, dated and initialed his changes, and resubmitted pages 1 and 2 of the Reinstatement Application to American General

34. In response to Question #4 on Page 2, Section II-B, Mendez provided the following information: "2/8/06 physical/no findings all normal." He initialed and dated this response as follows: "J.M. 5/7/07."

35. Mendez did not make any other changes to the Reinstatement Application.

36. In reliance upon Mendez's answers and each and every statement and representation made by Mendez in the Reinstatement Application, American General reinstated the Policy.

37. On March 18, 2008, American General received a Proof of Death Claimant's Statement from defendant Debby Mendez. Defendant Debby Mendez stated that Mendez had died on March 12, 2008 as a result of a brain tumor.

38. Due to the fact the Mendez's death had occurred within two years of the effective date of the reinstatement of the Policy, American General conducted a routine investigation regarding the representations set forth in the Reinstatement Application.

39. During its investigation, American General learned that the decedent materially misrepresented his health condition in the Reinstatement Application.

### MENDEZ'S TRUE MEDICAL CONDITION

40. American General learned that the decedent was diagnosed with a brain tumor on or about April 30, 2007 after undergoing a magnetic resonance imaging test (hereinafter "MRI") on April 27, 2007.

41. American General also learned that on April 24, 2007, Mendez had visited Dr. John Dokko, DO, at Summit Medical Group, wherein Mendez complained of excruciating frontal headaches for the last week or two. Dr. Dokko recommended Mendez undergo an MRI.

42. Thus, at the time of the execution of the Reinstatement Application answer to Question #4 in Section II-C on the Reinstatement Application for the Policy was false.

43. At the time of the submission of the Reinstatement Application Mendez answers to Questions #3 and #4 in Section II-C on the Reinstatement Application for the Policy were false.

44. Mendez's acknowledgements, agreement, and declarations by virtue of his signature on the Reinstatement Application were false.

45. American General was not aware of the true facts concerning Mendez's health prior to reissuing, executing or delivering the Policy.

46. American General reasonably relied upon the misrepresentations and omissions contained in the Reinstatement Application for the Policy.

47. Subsequent to completing the Reinstatement Application for the Policy and submitting it to American General, but prior to resubmitting the Reinstatement Application with a response to Question #4 on Section II-B, Mendez had additional consultations with healthcare professionals and diagnostic testing which changed the answers to questions contained in the reinstatement application.

48. On April 24, 2007, Mendez visited Dr. John Dokko, DO, at Summit Medical Group, wherein Mendez complained of excruciating frontal headaches for the last week or two. Dr. Dokko recommended Mendez undergo an MRI.

835166.1

49. On April 27, 2007, Mendez underwent an MRI which revealed the existence of a brain tumor.

50. On April 30, 2007, Mendez was evaluated by Dr. Otakakar R. Hubschmann, M.D., F.A.C.S. Dr. Hubschmann diagnosed Mendez with a glioblastoma. Dr. Hubschmann recommended radical resection as a course of action.

51. On May 2, 2007, Mendez was seen by Dr. Philip H. Gutin, M.D. Dr. Gutin diagnosed Mendez as having a gliobastoma. Dr. Gutin recommended a right frontal burr hole and a sterotactic biopsy of the corpus callosum mass.

52. On May 4, 2007, Mendez underwent a neurological consultation by Dr. Richard M. Hodosh, M.D., F.A.C.S. Dr. Hodosh diagnosed Mendez with a probable high-grade glioma left frontal area. Dr. Hodosh recommended surgery to remove as much of the tumor as possible.

53. Thus, at the time of the resubmission of the Reinstatement Application on May 7, 20007 answers to Question #4 in Section II-B, and Questions #1(a), #1(b), and #4 in Section II-C on the Reinstatement Application for the Policy were false.

54. Subsequent to Mendez's resubmission of the reinstatement application, but prior to reissuance of the Policy, Mendez had additional consultations with healthcare professionals and diagnostic testing which also changed the answers to questions contained in the reinstatement application false.

55. On May 14, 2007, Mendez was examined again by Dr. John Dokko, DO to obtain a medical clearance for an upcoming debulking procedure with biopsy of a large left frontal mass extending into the right hemisphere.

56. The Reinstatement Application for the Policy provides:

> I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

57. Prior to reinstatement of the Policy on May 21, 2007, Mendez was aware there was a change in his health that would have changed the answers to Questions #1(a), #1(b), and #4 of Section II-C on the Reinstatement Application.

58. Mendez did not disclose to American General the change in his health at the time he resubmitted the Reinstatement Application or at or before the time the Policy was reinstated.

59. If American General had been aware of Mendez' change in health, American General would not have agreed to reinstate the Policy.

## THE MISREPRESENTATIONS WERE MATERIAL

60. The misrepresentations in the reinstatement application affected American General's decision to reissue and deliver the Policy as written and to accept the risks upon which reinstatement of the Policy was based.

61. If American General had been aware of the true facts regarding Mendez's health American General would not have reinstated the Policy.

62. If true and complete information had been provided in response to the questions on the Reinstatement Application, American General would not have reinstated the Policy.

## COUNT I
### (Material Misrepresentation)

43. American General hereby repeats and reasserts each of the allegations

contained in each of the foregoing paragraphs as if fully set forth at length.

44. All of the information regarding Mendez's heath history was material to the risk undertaken by American General in reinstating the Policy and was relied upon by American General in reinstating the Policy.

45. American General's reliance upon the material misrepresentations and omissions in the Reinstatement Application was reasonable.

46. If Mendez had fully and completely disclosed the true facts regarding his health history, or if the true facts had otherwise been made known to American General before or at the time the Policy was reinstated, American General would not have reinstated the Policy and American General would not have accepted any premiums for the Policy.

47. Because of the foregoing material misrepresentations and failure to disclose, the reinstated Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone thereunder.

## COUNT II
### (Fraud)

48. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

49. The misrepresentations and failure to disclose the true facts regarding Mendez's his health history were made and done knowingly by Mendez with intent to deceive American General into reinstating the Policy.

50. The fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to reinstate the Policy.

51. If the truth had been disclosed to American General regarding Mendez's health history prior to or at the time the Policy was reinstated, American General would not have reinstated the Policy, nor would American General have accepted premiums for the Policy.

52. Because of the intentional and fraudulent misrepresentations and concealment, the reinstated Policy is void *ab initio* and of no force and effect since its inception and American General never has been nor will American General become liable to anyone thereunder.

53. American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

## COUNT III
### (Declaratory Relief)

54. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

55. An actual controversy has arisen and now exists between American General and Defendant Debby Mendez concerning their respective rights and duties under the Policy.

56. American General contends that, because of the material and fraudulent misrepresentations and concealments contained in the Reinstatement Application for the Policy, the reinstated Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone

835166.1

thereunder.

57. A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

## COUNT IV
### (Declaratory Relief)

58. American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

59. Mendez had a duty to apprise American General of his additional consultations with healthcare professionals, diagnostic testing, and diagnosis subsequent to completing the Reinstatement Application for the Policy.

60. Mendez failed to apprise American General of his additional consultations with healthcare professionals, diagnostic testing, and diagnosis subsequent to completing the Reinstatement Application for the Policy.

61. Mendez's additional consultations with healthcare professionals, diagnostic testing, and resulting diagnosis subsequent to completing the Reinstatement Application for the Policy are material insofar as, if American General had been made aware of them, American General would not have reinstated the Policy.

62. Because there was a change in Mendez's health that would change the answers to the questions set forth in the Reinstatement Application for the Policy before the Policy was reinstated, the reinstatement was void, and American General never has been and never will become liable to anyone under the Policy.

63. A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

835166.1

**WHEREFORE**, American General demands judgment as follows:

a.  A declaration that upon American General's deposit with the Registry of Court of the total amount of premiums paid under the Policy, that the Policy is void *ab initio* and of no force and effect from inception, and that plaintiff has no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that plaintiff be ordered to surrender to American General the original and all copies of the Policy in her possession, custody or control for cancellation;

b.  A declaration that no insurance under the reinstated Policy ever took effect because there was a change in Mendez's health that would have changed the answers to the questions set forth in the Reinstatement Application for the Policy before the Policy was reinstated, and that American General never has been and never will become liable to anyone under the reinstated Policy.

c.  An order requiring plaintiff to reimburse American General its cost of investigation, costs of suit and attorneys fees;

d.  Such other and further relief as may be available to American General which the Court deems to be just and proper.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Attorneys for Plaintiff American General Life Insurance Company

By: _____
Julie E. Von Bevern

Dated: April 3, 2009

835166.1