## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBBY MENDEZ, | :Civil Action No. 09-cv-01155 |
| Plaintiff, | : **CERTIFICATION OF KEVIN C.** |
| | : **DONOVAN IN SUPPORT OF** |
| v. | : **DEFENDANT'S MOTION FOR** |
| | : **SUMMARY JUDGMENT** |
| AMERICAN GENERAL LIFE | : **DISMISSING THE COMPLAINT** |
| INSURANCE COMPANY, | : **AND FOR ENTRY OF JUDGMENT** |
| | : **ON ITS COUNTERCLAIMS** |
| Defendant. | : |
| | : **FILED ELECTRONICALLY** |

KEVIN C. DONOVAN, of full age, hereby certifies as follows:

1.  I am an attorney admitted to plenary practice before this Court, and a member of the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP., attorneys for defendant American General Life Insurance Company ("American General" or "defendant") in this matter.  I submit this Certification in support of Defendant's Motion for Summary Judgment Dismissing the Complaint and for Entry of Judgment on its Counterclaims pursuant to Fed. R. Civ. P. 56.

2.  Attached hereto as Exhibit A is a true and correct copy of the Joint Stipulation of Facts entered into in this matter by American General and by plaintiff Debby Mendez.

959089.1

3.     Copies of American General's Answer and Counterclaims, and Debby's Answer to the Counterclaims, are attached hereto as Exhibits B and C, respectively.

4.     Attached hereto as Exhibit D are true and correct copies of the Plaintiff's Answers to Defendant's Interrogatories Nos. 1, 15 and 16.

5.     Attached hereto as Exhibit E is a true and correct copy of a written statement provided for the use of American General by Debby Mendez on March 31, 2008 (produced by the plaintiff bearing Bates Numbers DM 000080 – DM 000084).

6.     Attached hereto as Exhibit F is a true and correct copy of a document produced by American General in this action, bearing Bates Number AGLIC 000738. The document shows that on May 8, 2007 Debby Mendez called Atlantic Brain & Spine to schedule surgery for her husband Jorge, the insured under the Policy.

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 2, 2010.

_____
KEVIN C. DONOVAN

959089.1

2

# EXHIBIT A

491842.1

Garrity, Graham, Murphy, Garofalo & Flinn
A Professional Corporation
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, NJ 07936
Telephone: (973) 509-7500
**Attorneys for Plaintiff, Debby Mendez**
**Our File No. 990.22450/FXG**

| | |
|---|---|
| DEBBY MENDEZ, | : UNITED STATES DISTRICT |
| | : COURT |
| Plaintiff, | : DISTRICT OF NEW JERSEY |
| | : |
| v. | : Civil Action No.: |
| | : 09-cv-01155 (WJM) |
| AMERICAN GENERAL LIFE | : |
| INSURANCE COMPANY, | : **Joint Stipulation of Facts** |
| | : |
| Defendant. | : |

Plaintiff, Debby Mendez ("Debby Mendez" and/or "plaintiff")

and defendant American General Life Insurance Company ("American

General" and/or "defendant"), by and through their undersigned counsel,

hereby stipulate that the following facts are undisputed.

1.    American General issued Renewable Level Benefit Term Life

Policy No. YM00399650 (hereinafter the "Policy") insuring the life of Jorge

Mendez (hereinafter sometimes referred to as "Mendez"), effective

December 6, 2006.

2.    On April 15, 2007, American General contacted Mendez

954467.7

informing him that the Policy was terminated due to a failure to pay premiums.    American General informed Mendez to contact American General for information regarding reinstatement of the Policy.

3.    The plaintiff contends that American General's notice means that the Policy had lapsed, i.e., the life insurance benefits had ended, but contends that the Policy itself had not terminated.

4.    On April 26, 2007, Jeffrey Greenberg of PGA Financial Group forwarded Jorge Mendez's Reinstatement Application to American General.

5.    On May 8, 2007, as described below, Jorge Mendez supplemented his answers in the Reinstatement Application.

6.    Based on Jorge Mendez's answers to the questions in the Reinstatement Application (and payment of back premiums due), American General reinstated the Policy.

7.    Jorge Mendez died on March 12, 2008 (according to a Proof of Death Statement filed by Debby Mendez).

8.    Plaintiff, Debby Mendez, is an adult resident and a citizen of the State of New Jersey, having her residence at 42 Maple Street, Chatham, New Jersey 07928.

9.    Plaintiff, Debby Mendez, is named the primary beneficiary of the Policy and has made claim for payment of the life insurance benefits under the Policy.

2

954467.7

10.    Plaintiff, Debby Mendez, seeks payment of the death benefit of $1.2 million under the Policy on account of the death of the insured, Jorge Mendez, on March 12, 2008.

11.    American General contends that Jorge Mendez made material misrepresentations in his Reinstatement Application for the Policy concerning his health and medical history, representations upon which American General reasonably relied in agreeing to reinstate the Policy.

12.    Based on what American General contends are those material misrepresentations, American General denied plaintiff's claim and rescinded the Policy.

13.    Plaintiff denies that the representations made by Jorge Mendez in the Reinstatement Application were false and contends that at the time the Reinstatement Application was completed by Jorge Mendez, the representations were true and accurate to the knowledge of Jorge Mendez. She contends that Mendez's entitlement to reinstatement of the insurance, i.e., the life insurance benefits, is controlled by the policy terms and conditions, and that the insurance is automatically restored after lapse upon submission of the Reinstatement Application to American General.

14.    A controversy exists between the parties hereto requiring a declaration from this Court as to the rights and obligations of the parties.

15.    This Court has subject matter jurisdiction over this matter

3

954467.7

pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

16.   Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claim occurred within this district and because one or more of the defendants resides within this district.

17.   On September 26, 2006, the decedent, Jorge Mendez, submitted a Term Insurance Application to American General Life Insurance Company seeking issuance of a life insurance policy in the amount of $1.2 million.

18.   Part A of the application was executed in Livingston, New Jersey. Part B of the application was executed in Chatham, New Jersey.

19.   On December 6, 2006, American General issued Renewable Term Level Benefit Term Life Policy No. YM00399560 insuring the life of Mendez. A true copy of the Policy is attached hereto as Exhibit A.

20.   On April 15, 2007, American General contacted Mendez informing him that the Policy was terminated due to a failure to pay premiums.   American General informed Mendez to contact American General for information regarding reinstatement of the Policy.

21.   A true and correct copy of an April 15, 2007 letter sent to Mendez, advising him of the foregoing, is attached hereto as Exhibit B.

4

954467.7

22.    On April 20, 2007, Mendez executed a Reinstatement Application for Life Insurance, which was submitted to American General on April 26, 2007. A true and correct copy of the Reinstatement Application that was forwarded to American General by PGA Financial on April 26, 2007 is included in Exhibit C.

23.    On May 2, 2007 American General forwarded a letter to Jorge Mendez acknowledging receipt of his request to reinstate the life insurance contract and advising that it was unable to complete his request until such time as he responded to Question No. 4 on Page 2, Section II-B. Though the parties disagree on whether the entire Reinstatement Application was sent, they agree that a copy of Page 2, Section II-B that included Question No. 4, was attached to the May 2, 2007 letter. Mr. Mendez was instructed to answer Question No. 4 using ink and date the changes. A true copy of the American General May 2, 2007 letter and Page 2, Section II-B of the Reinstatement Application (blank as to Question No. 4 at time of receipt) that included Question No. 4 is attached hereto as Exhibit D.

24.    On May 7, 2007 Jorge Mendez completed, dated and initialed his response to Question No. 4, and resubmitted Pages 1 and 2 of the Reinstatement Application, which were forwarded to American General on May 8, 2007 by PGA Financial. A true copy of the Pages 1 and 2 forwarded, along with the PGA Financial cover document, are attached

5

hereto as Exhibit E.

25.    In his response to Question No. 4 on Page 2, Section II-B of the Reinstatement Application, Jorge Mendez wrote:

"2/8/06 physical/no findings

all normal JM 5/7/07"

26.    Jorge Mendez was examined by Dr. Lloyd Alterman on February 8, 2006.  A true copy of Dr. Alterman's report of February 8, 2006 is attached hereto as Exhibit F.

27.    In reliance upon Mendez's answers and each and every statement and representation made by Mendez in the Reinstatement Application as to his health and medical condition which answers were material to the risk, on May 24, 2007 American General reinstated the Policy.

28.    On March 18, 2008, American General received a Proof of Death Claimant's Statement from plaintiff, Debby Mendez, who stated that Mendez had died on March 12, 2008 as a result of a brain tumor.

29.    American General conducted an investigation regarding the representations made by Jorge Mendez as set forth in the Reinstatement Application.

30.    American General learned that on April 24, 2007, Mendez had visited Dr. John Dokko, DO, at Summit Medical Group.  The report of Dr.

6

954467.7

Dokko concerning his evaluation and recommendation of an MRI is attached hereto as Exhibit G.

31.    American General learned that on April 27, 2007 Jorge Mendez underwent an MRI that evidenced a mass within the left frontal lobe of Mendez's brain. The report of Dr. Amir Salomon dated April 27, 2007 concerning the results of the MRI is attached hereto as Exhibit H.

32.    Debby Mendez represents that on April 29, 2007 Jorge Mendez was informed by Dr. Dokko of the results of the MRI as contained in the report of Dr. Salomon.

33.    American General learned that on April 30, 2007 Mendez was evaluated by Dr. Otakakar R. Hubschmann, M.D., F.A.C.S. Dr. Hubschmann rendered his impression that Jorge Mendez had a large tumor of all probability a glioblastoma. Dr. Hubschmann recommended radical resection as a course of action. A true copy of Dr. Hubschmann's report dated May 4, 2007 is attached hereto as Exhibit I.

34.    On May 2, 2007, Mendez was seen by Dr. Philip H. Gutin, M.D. Dr. Gutin diagnosed Mr. Mendez as having a glioblastoma. Dr. Gutin recommended a right frontal burr hole and stereotactic biopsy of the corpus callosum mass. A true copy of Dr. Gutin's report dated May 2, 2007 is attached hereto as Exhibit J.

35.    On May 4, 2007 Mendez underwent a neurological consultation

7

954467.7

by Dr. Richard M. Hodaosh, M.D., F.A.C.S. Dr. Hodaosh diagnosed Jorge Mendez with a probable high-grade glioma left frontal area. Dr. Hodaosh recommended surgery to remove as much of the tumor as possible. A true copy of the report dated May 4, 2007 of Dr. Hodaosh is attached hereto as Exhibit K.

36.     On May 14, 2007, Mendez was examined again by Dr. John Dokko, DO, to obtain a medical clearance for an upcoming debulking procedure with biopsy of a large left frontal mass extending into the right hemisphere. A true copy of the report of Dr. John Dokko dated May 14, 2007 is attached hereto as Exhibit L.

37.     On May 17, 2007 Jorge Mendez underwent a surgical procedure for removal of the mass identified in the MRI report of Dr. Salomon. The Surgical Pathology Report of John-Paul Bouffard, M.D. dated May 17, 2007 is attached hereto as Exhibit M.

38.     Following his surgical procedure, on May 17, 2007 Jorge Mendez was informed that the mass identified in the MRI and noted in the report of Dr. Salomon dated April 27, 2007 was in fact a brain tumor, specifically a glioblastoma.

39.     Jorge Mendez did not disclose to American General the change in his health, or the physicians with whom he consulted, after he had submitted the Reinstatement Application that he dated and executed on

8

954467.7

April 20, 2007, which was submitted to American General via facsimile on

April 26, 2007, or after he submitted his response to Question No. 4 on May

7, 2007, which PGA Financial forwarded to American General on May 8,

2007.

    40.    Based upon the answers submitted by Mendez in the

Reinstatement Application, American General reinstated the Policy on May

24, 2007.

    41.    If American General had known of the change in the health of

Jorge Mendez, it would not have reinstated the Policy.

    The foregoing facts are stipulated by the parties to be true.

| Garrity, Graham, Murphy, Garofalo & Flinn<br>72 Eagle Rock Avneue<br>Suite 350<br>P.O. Box 438<br>East Hanover, NJ 07936<br>(973) 509-7500 | WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP<br>33 Washington Street<br>Newark, New Jersey 07102-5003<br>Tel: (973) 624-0800 |
| --- | --- |
| By: *Francis Garrity*<br>    Francis X. Garrity<br>Dated: *March 2, 2010* | By: *Kev C. Dono*<br>    Kevin C. Donovan<br>Dated: *March 2, 2010* |

954467.7

# EXHIBIT B

491842.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko (RPL 1553)
33 Washington Street
Newark, New Jersey 07102-5003
Tel: (973) 624-0800
Fax: (973) 624-0808
*robert.lesko@wilsonelser.com*
Attorneys for Defendant American General Life
Insurance Company

| | |
|---|---|
| DEBBY MENDEZ, | : UNITED STATES |
| | : DISTRICT COURT |
| Plaintiff, | : DISTRICT OF NEW JERSEY |
| | : |
| v. | : Civil Action No. 09-cv-01155 |
| | : |
| AMERICAN GENERAL LIFE INSURANCE | : |
| COMPANY, | :  **ANSWER AND** |
| | **COUNTERCLAIM** |
| Defendant. | : |

Defendant, American General Life Insurance Company ("American General" and/or Defendant"), having its principal place of business at 2929 Allen Parkway Houston, Texas  77019, by and through its undersigned counsel as an for an Answer to the Complaint, say:

## THE PARTIES

1.      American General is without knowledge or information to sufficient to form a belief as to the truth of the allegations contained in the corresponding paragraph of the Complaint, and therefore leave plaintiff to her proofs.

2.      American General admits that it maintains its primary place of business at 2929 Allen Parkway, Houston, Texas and is authorized to do business in the State of New Jersey.  Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

3.      American General admits that it issued Renewable Level Benefit Term

835166.1

Life Policy YM00399650 (hereinafter the "Policy") insuring the life of Jorge Mendez (hereinafter "Mendez") effective December 6, 2006 which Policy speaks for itself. Except as expressly admitted herein, and to the extent that the allegations of the corresponding paragraph of the Complaint are inconsistent with or contrary to the terms and provisions of the Policy, American General denies the allegations contained in the corresponding paragraph of the Complaint.

4.       American General admits that the Policy was issued effective December 6, 2006.  By way of further response, Defendant states the Policy was terminated on February 6, 2007.  Except as expressly admitted herein, Defendant denies the allegations contained in the corresponding paragraph of the Complaint.

5.       American General admits that it received a Reinstatement Application dated April 20, 2007.  Defendant further admits that on April 26, 2007, Jeffrey Greenberg of PGA Financial Group, forwarded Mendez's Reinstatement Application to American General.  Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

6.       American General admits that the Reinstatement Application required Mendez to provide the name of and address of his personal physician.  American General further admits that in response to this question on the Reinstatement Application, Mendez responded "Dr. Alterman, SM Group Berkley Hts. Diamond Hill Rd." American General further admits that the Reinstatement Application required Mendez to provide the date, reasons, findings and treatment of last visit.  American General further admits that Mendez failed to disclose full and complete information in response to this question. American General further admits that as part of the original application for the Policy,

Part B Life Insurance Application asks an applicant the name and address of each proposed Insured's personal physician(s). American General further admits that in response to this question, Mendez wrote "Dr. Alterman Summit Med Group Diamond Hill Rd. Berkley Heights N.J." Part B Life Insurance Application also asks the applicant to provide the name of insured, date, reason, findings and treatment of last visit. Defendant further admits that in response to this question, Mendez wrote "@ year no recall." Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

8.[sic] American General admits the allegations contained in the corresponding paragraph of the Complaint.

9.      American General admits that Mendez resubmitted pages 1 and 2 of the Reinstatement Application, responding to the Question #4, Section II-B, stating "2/18/06 physical/no findings all normal J.M. 5/7/07." American General further admits that, in reliance upon the information provided by Mendez in the Reinstatement Application, American General reinstated the Policy on May 21, 2007. Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

10.      American General admits that Debby Mendez was named as the primary beneficiary of the Policy. Defendant further admits that Debby Mendez completed a Proof of Death Claimant's Statement dated March 18, 2008, which she submitted to American General. Except as expressly admitted herein, American General denies the allegations contained in the corresponding paragraph of the Complaint.

11.      American General admits that by letter dated September 23, 2008

American General advised Debby Mendez of its decision to rescind the Policy due to material misrepresentation contained in the Reinstatement Application, which letter speaks for itself. Except as expressly admitted herein and to the extent that the allegations are inconsistent with or contrary to said letter, American General denies the allegations contained in the corresponding paragraph of the Complaint.

12.    American General denies the allegations contained in the corresponding paragraph of the Complaint.

13.    American General denies the allegations contained in the corresponding paragraph of the Complaint.

14.    American General denies the allegations contained in the corresponding paragraph of the Complaint.

WHEREFORE, American General demands judgment in its favor dismissing the Complaint with prejudice and awarding American General reasonable attorney fees, costs of suit and such other relief to which American General may be entitled and/or which the Court deems to be equitable and just.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state fact sufficient to constitute a cause of action for which relief can be granted.

3.    The Complaint should be dismissed on the doctrine of equitable estoppel.

5.    The Complaint should be dismissed based upon the doctrine of unclean hands.

6.    If and to the extent that American General failed to perform any obligation owing to plaintiff, which Defendant categorically denies, such performance was

835166.1

prevented or made impossible as a result of acts or omission of plaintiff and/or other third parties.

7.    The Complaint should be dismissed because the Policy is void *ab initio* and unenforceable by virtue of fraud in the inducment by the insured.

8.    The Complaint should be dismissed because the Policy is void *ab initio* and unenforceable by virtue of a mutual mistake of material fact and/or a unilateral mistake of facts on the part of American General accompanied by fraud committed by the insured and/or the plaintiff.

10.    The Complaint should be dismissed in its entirety in accordance with the public policy of the State of New Jersey on account of fraudulent conduct in connection with the reinstatement application for the Policy.

11.    Plaintiff's claims should be dismissed because failure of one or more of the conditions precedent to coverage contained with in the Policy, including but not limited to: the requirement that there has been no change in the health of the proposed insured that would change the answers to any questions in the reinstatement application.

12.    American General presently has insufficient knowledge or information on which to form a belief as to whether they may have additional, yet unstated affirmative defenses. American General reserves the right to assert additional affirmative defenses in the event discovery or further investigation indicates that asserting additional affirmative defenses would be warranted.

## COUNTERCLAIM

By way of Counterclaim against plaintiff and by and through the undersigned counsel, American General hereby alleges and says:

1. Plaintiff Debby Mendez is an adult resident, and upon information and belief, a citizen of the State of New Jersey, having her residence at 42 Maple Street, Chatham, New Jersey, 07928.

2. Plaintiff Debby Mendez is named the primary beneficiary of the Policy and has made claim for payment of the life insurance benefits under the Policy.

3. Plaintiff seeks payment of benefits under the Policy on account of the death of the insured, Jorge Mendez (hereinafter "Mendez" and/or "decedent").

4. The policy provides a level term death benefit of $1.2 million in the event of Mendez's death, subject to all of the terms and conditions contained within the Policy.

5. During a routine investigation following receipt of plaintiff's claim for benefits, American General learned for the first time that Mendez had made material misrepresentations in his Reinstatement Application for the Policy concerning his health and medical history, misrepresentations upon which American General reasonably relied in agreeing to reinstate the Policy.

6. Based on the material misrepresentations, American General denied plaintiff's claim and rescinded the Policy.

7. Plaintiff retained counsel to refute the claim denial and rescission and has filed this legal action against American General to recover benefits under the Policy.

835166.1

8.    A controversy exists between and among the parties hereto requiring a declaration from this Court as to the rights and obligations of the parties.

9.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.00.

10.    Venue lies within this District under the provisions of 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claim occurred within this district and because one or more of the defendants resides within this district.

## MISREPRESENTATIONS

11.    On September 26, 2006, the decedent Jorge Mendez submitted a Term Insurance Application to American General Life Insurance Company seeking issuance of a life insurance policy in the amount of $1.2 million.

12.    Part A of the application was executed in Livingston, New Jersey.  Part B of the application was executed in Chatham, New Jersey.

13.    On December 6, 2006, American General issued Renewable Term Level Benefit Term Life Policy No. YM00399560 (the "Policy") insuring the life of Mendez.

14.    On April 15, 2007, American General contacted Mendez informing him that the Policy was terminated due to a failure to pay premiums.  American General informed Mendez to contact American General for information regarding reinstatement of the Policy.

15.    On April 20, 2007, Mendez executed a Reinstatement Application for Life Insurance, which was submitted to American General on April 26, 2007.

16.    The Reinstatement Application was executed in Chatham, New Jersey.

17.     As part of the Reinstatement Application, Mendez was obligated to provide true and complete answers to questions relating to his health history.

18.     Question #3 on the Reinstatement Application under Section II-B asked, "Name and address of your personal physician."

19.     In response to this question, Mendez wrote "Dr. Alterman SM Group Berkley Hts. Diamond Hill Rd." Mendez did not identify any other personal physicians.

20.     Question #4 on the Reinstatement Application under Section II-B asked, "Date, reason, findings and treatment at last visit."

21.     Mendez did not provide a response to this question.

22.     Question # 1(a) on the Reinstatement Application under Section II-C: Medical Information asked, "Have you ever been diagnosed or been treated for, or consulted a licensed healthcare provider for: High blood pressure, diabetes, cancer, tumor, epilepsy, asthma, emphysema, or any disorder of the heart of the blood vessels?"

23.     In response to this question, Mendez checked "no."

24.     Question # 1(b) on the Reinstatement Application under Section II-C: Medical Information asked, "Have you ever been diagnosed or been treated for, or consulted a licensed healthcare provider for: Disease or disorder of the stomach, intestines, liver, pancreas, lungs, kidneys, urinary tract, brain, prostate, lymph glands, or reproductive organs?"

25.     In response to this question, Mendez checked "no."

26.     Question # 3 on the Reinstatement Application under Section II-C: Medical Information asked, "Are you currently taking any medication, treatment or therapy or under medical observation?"

27.   In response to this question, Mendez checked "no."

28.   Question # 4 on the Reinstatement Application under Section II-C: Medical Information asked: "Do you have any symptoms or knowledge of any other condition not disclosed above?"

29.   In response to this question, Mendez checked "no."

30.   By executing the Reinstatement Application, Mendez acknowledged and agreed that American General would rely upon the information provided in the Reinstatement Application in determining whether to issue the Policy, and he promised that the information contained in the application was true and complete, as follows:

> I have read the above statements or they have been read to me.   They are true and complete to the best of my knowledge and belief.   I understand that this application shall be the basis for: (1) any policy issued; or (2) changes to the existing policy as requested on this application.   I understand that any misrepresentation contained in this application and related forms and relied upon by the Company may be used to reduce or deny a claim or void the policy if it is within the contestable period and if such misrepresentations materially affects the acceptance of this risk.   I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there is no change in the health of any proposed insured that would change the answers to any questions in the application.

31.   On May 2, 2007, American General contacted Mendez and advised him that American General had received his request to reinstate the Policy, but that American General was unable to complete the request until Mendez answered Question # 4 on Page 2, Section II-B.   American General asked Mendez to use ink then initial and date his changes.

32.   Question #4 on Page 2, Section II-B asks for the date, reason, findings,

and treatment at Mendez's last visit to his personal physician.

33.    On or about May 7, 2007, Mendez answered Question #4 on Page 2, Section II-B, dated and initialed his changes, and resubmitted pages 1 and 2 of the Reinstatement Application to American General

34.    In response to Question #4 on Page 2, Section II-B, Mendez provided the following information: "2/8/06 physical/no findings all normal." He initialed and dated this response as follows: "J.M. 5/7/07."

35.    Mendez did not make any other changes to the Reinstatement Application.

36.    In reliance upon Mendez's answers and each and every statement and representation made by Mendez in the Reinstatement Application, American General reinstated the Policy.

37.    On March 18, 2008, American General received a Proof of Death Claimant's Statement from defendant Debby Mendez.  Defendant Debby Mendez stated that Mendez had died on March 12, 2008 as a result of a brain tumor.

38.    Due to the fact the Mendez's death had occurred within two years of the effective date of the reinstatement of the Policy, American General conducted a routine investigation regarding the representations set forth in the Reinstatement Application.

39.    During its investigation, American General learned that the decedent materially misrepresented his health condition in the Reinstatement Application.

## MENDEZ'S TRUE MEDICAL CONDITION

40.    American General learned that the decedent was diagnosed with a brain tumor on or about April 30, 2007 after undergoing a magnetic resonance imaging test (hereinafter "MRI") on April 27, 2007.

835166.1

41.    American General also learned that on April 24, 2007, Mendez had visited Dr. John Dokko, DO, at Summit Medical Group, wherein Mendez complained of excruciating frontal headaches for the last week or two.  Dr. Dokko recommended Mendez undergo an MRI.

42.    Thus, at the time of the execution of the Reinstatement Application answer to Question #4 in Section II-C on the Reinstatement Application for the Policy was false.

43.    At the time of the submission of the Reinstatement Application Mendez answers to Questions #3 and #4 in Section II-C on the Reinstatement Application for the Policy were false.

44.    Mendez's acknowledgements, agreement, and declarations by virtue of his signature on the Reinstatement Application were false.

45.    American General was not aware of the true facts concerning Mendez's health prior to reissuing, executing or delivering the Policy.

46.    American General reasonably relied upon the misrepresentations and omissions contained in the Reinstatement Application for the Policy.

47.    Subsequent to completing the Reinstatement Application for the Policy and submitting it to American General, but prior to resubmitting the Reinstatement Application with a response to Question #4 on Section II-B, Mendez had additional consultations with healthcare professionals and diagnostic testing which changed the answers to questions contained in the reinstatement application.

48.    On April 24, 2007, Mendez visited Dr. John Dokko, DO, at Summit Medical Group, wherein Mendez complained of excruciating frontal headaches for the last week or two. Dr. Dokko recommended Mendez undergo an MRI.

49.     On April 27, 2007, Mendez underwent an MRI which revealed the existence of a brain tumor.

50.     On April 30, 2007, Mendez was evaluated by Dr. Otakakar R. Hubschmann, M.D., F.A.C.S. Dr. Hubschmann diagnosed Mendez with a glioblastoma. Dr. Hubschmann recommended radical resection as a course of action.

51.     On May 2, 2007, Mendez was seen by Dr. Philip H. Gutin, M.D. Dr. Gutin diagnosed Mendez as having a gliobastoma. Dr. Gutin recommended a right frontal burr hole and a sterotactic biopsy of the corpus callosum mass.

52.     On May 4, 2007, Mendez underwent a neurological consultation by Dr. Richard M. Hodosh, M.D., F.A.C.S. Dr. Hodosh diagnosed Mendez with a probable high-grade glioma left frontal area. Dr. Hodosh recommended surgery to remove as much of the tumor as possible.

53.     Thus, at the time of the resubmission of the Reinstatement Application on May 7, 20007 answers to Question #4 in Section II-B, and Questions #1(a), #1(b), and #4 in Section II-C on the Reinstatement Application for the Policy were false.

54.     Subsequent to Mendez's resubmission of the reinstatement application, but prior to reissuance of the Policy, Mendez had additional consultations with healthcare professionals and diagnostic testing which also changed the answers to questions contained in the reinstatement application false.

55.     On May 14, 2007, Mendez was examined again by Dr. John Dokko, DO to obtain a medical clearance for an upcoming debulking procedure with biopsy of a large left frontal mass extending into the right hemisphere.

56.     The Reinstatement Application for the Policy provides:

I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

57.    Prior to reinstatement of the Policy on May 21, 2007, Mendez was aware there was a change in his health that would have changed the answers to Questions #1(a), #1(b), and #4 of Section II-C on the Reinstatement Application.

58.    Mendez did not disclose to American General the change in his health at the time he resubmitted the Reinstatement Application or at or before the time the Policy was reinstated.

59.    If American General had been aware of Mendez' change in health, American General would not have agreed to reinstate the Policy.

### THE MISREPRESENTATIONS WERE MATERIAL

60.    The misrepresentations in the reinstatement application affected American General's decision to reissue and deliver the Policy as written and to accept the risks upon which reinstatement of the Policy was based.

61.    If American General had been aware of the true facts regarding Mendez's health American General would not have reinstated the Policy.

62.    If true and complete information had been provided in response to the questions on the Reinstatement Application, American General would not have reinstated the Policy.

### COUNT I
### (Material Misrepresentation)

43.    American General hereby repeats and reasserts each of the allegations

835166.1

contained in each of the foregoing paragraphs as if fully set forth at length.

44.    All of the information regarding Mendez's heath history was material to the risk undertaken by American General in reinstating the Policy and was relied upon by American General in reinstating the Policy.

45.    American General's reliance upon the material misrepresentations and omissions in the Reinstatement Application was reasonable.

46.    If Mendez had fully and completely disclosed the true facts regarding his health history, or if the true facts had otherwise been made known to American General before or at the time the Policy was reinstated, American General would not have reinstated the Policy and American General would not have accepted any premiums for the Policy.

47.    Because of the foregoing material misrepresentations and failure to disclose, the reinstated Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone thereunder.

## COUNT II
### (Fraud)

48.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

49.    The misrepresentations and failure to disclose the true facts regarding Mendez's his health history were made and done knowingly by Mendez with intent to deceive American General into reinstating the Policy.

50.   The fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to reinstate the Policy.

51.   If the truth had been disclosed to American General regarding Mendez's health history prior to or at the time the Policy was reinstated, American General would not have reinstated the Policy, nor would American General have accepted premiums for the Policy.

52.   Because of the intentional and fraudulent misrepresentations and concealment, the reinstated Policy is void *ab initio* and of no force and effect since its inception and American General never has been nor will American General become liable to anyone thereunder.

53.   American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

## COUNT III
### (Declaratory Relief)

54.   American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

55.   An actual controversy has arisen and now exists between American General and Defendant Debby Mendez concerning their respective rights and duties under the Policy.

56.   American General contends that, because of the material and fraudulent misrepresentations and concealments contained in the Reinstatement Application for the Policy, the reinstated Policy is void *ab initio* and of no force and effect since its inception, and American General never has been and never will become liable to anyone

thereunder.

57.   A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

**COUNT IV**
**(Declaratory Relief)**

58.   American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

59.   Mendez had a duty to apprise American General of his additional consultations with healthcare professionals, diagnostic testing, and diagnosis subsequent to completing the Reinstatement Application for the Policy.

60.   Mendez failed to apprise American General of his additional consultations with healthcare professionals, diagnostic testing, and diagnosis subsequent to completing the Reinstatement Application for the Policy.

61.   Mendez's additional consultations with healthcare professionals, diagnostic testing, and resulting diagnosis subsequent to completing the Reinstatement Application for the Policy are material insofar as, if American General had been made aware of them, American General would not have reinstated the Policy.

62.   Because there was a change in Mendez's health that would change the answers to the questions set forth in the Reinstatement Application for the Policy before the Policy was reinstated, the reinstatement was void, and American General never has been and never will become liable to anyone under the Policy.

63.   A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

835166.1

**WHEREFORE,** American General demands judgment as follows:

a.     A declaration that upon American General's deposit with the Registry of Court of the total amount of premiums paid under the Policy, that the Policy is void *ab initio* and of no force and effect from inception, and that plaintiff has no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that plaintiff be ordered to surrender to American General the original and all copies of the Policy in her possession, custody or control for cancellation;

b.     A declaration that no insurance under the reinstated Policy ever took effect because there was a change in Mendez's health that would have changed the answers to the questions set forth in the Reinstatement Application for the Policy before the Policy was reinstated, and that American General never has been and never will become liable to anyone under the reinstated Policy.

c.     An order requiring  plaintiff to reimburse American General its cost of investigation, costs of suit and attorneys fees;

d.     Such other and further relief as may be available to American General which the Court deems to be just and proper.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
Attorneys for Plaintiff American General Life Insurance Company

By:_____
Julie E. Von Bevern

Dated: April 3, 2009

835166.1

# EXHIBIT C

491842.1

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN
A Professional Corporation
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, NJ 07936
Telephone: 973-509-7500
**Attorneys for Plaintiff, Debby Mendez**
**Our File No. 990.22450/FXG**

| | | |
|---|---|---|
| DEBBY MENDEZ, | : | UNITED STATES DISTRICT COURT |
| | : | DISTRICT OF NEW JERSEY |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO: |
| vs. | : | 09-cv-01155 (WJM) |
| | : | |
| AMERICAN GENERAL LIFE | : | |
| INSURANCE COMPANY, | : | **ANSWER TO COUNTERCLAIM** |
| | : | |
| Defendant. | : | |
| | : | |

Plaintiff, by way of Answer to the Counterclaim of defendant, American General Life Insurance Company, says:

1. Plaintiff admits the allegations of paragraph 1 of defendant's Counterclaim.

2. Plaintiff admits the allegations of paragraph 2 of defendant's Counterclaim.

3. Plaintiff admits the allegations of paragraph 3 of defendant's Counterclaim.

4. Plaintiff admits the allegations of paragraph 4 of defendant's Counterclaim.

5. Plaintiff denies the allegations of paragraph 5 of defendant's Counterclaim.

6. Plaintiff denies the allegations of paragraph 6 of

defendant's Counterclaim.

7.   Plaintiff admits the allegations of paragraph 7 of defendant's Counterclaim.

8.   Plaintiff admits the allegations of paragraph 8 of defendant's Counterclaim.

9.   Plaintiff admits the allegations of paragraph 9 of defendant's Counterclaim.

10.  Plaintiff admits the allegations of paragraph 10 of defendant's Counterclaim.

## MISREPRESENTATIONS

11.  Plaintiff admits the allegations of paragraph 11 of defendant's Counterclaim.

12.  Plaintiff admits the allegations of paragraph 12 of defendant's Counterclaim.

13.  Plaintiff admits the allegations of paragraph 13 of defendant's Counterclaim.

14.  Plaintiff admits the allegations of paragraph 14 of defendant's Counterclaim.

15.  Plaintiff admits the allegations of paragraph 15 of defendant's Counterclaim.

16.  Plaintiff admits the allegations of paragraph 16 of defendant's Counterclaim.

17.  Plaintiff admits the allegations of paragraph 17 of defendant's Counterclaim.

18.  Plaintiff admits the allegations of paragraph 18 of defendant's Counterclaim.

19. Plaintiff admits the allegations of paragraph 19 of defendant's Counterclaim.

20. Plaintiff admits the allegations of paragraph 20 of defendant's Counterclaim.

21. Plaintiff admits the allegations of paragraph 21 of defendant's Counterclaim.

22. Plaintiff admits the allegations of paragraph 22 of defendant's Counterclaim.

23. Plaintiff admits the allegations of paragraph 23 of defendant's Counterclaim.

24. Plaintiff admits the allegations of paragraph 24 of defendant's Counterclaim.

25. Plaintiff admits the allegations of paragraph 25 of defendant's Counterclaim.

26. Plaintiff admits the allegations of paragraph 26 of defendant's Counterclaim.

27. Plaintiff admits the allegations of paragraph 27 of defendant's Counterclaim.

28. Plaintiff admits the allegations of paragraph 28 of defendant's Counterclaim.

29. Plaintiff admits the allegations of paragraph 29 of defendant's Counterclaim.

30. Plaintiff admits the allegations of paragraph 30 of defendant's Counterclaim.

31. Plaintiff admits the allegations of paragraph 31 of defendant's Counterclaim.

32.   Plaintiff admits the allegations of paragraph 32 of defendant's Counterclaim.

33.   Plaintiff admits the allegations of paragraph 33 of defendant's Counterclaim.

34.   Plaintiff admits the allegations of paragraph 34 of defendant's Counterclaim.

35.   Plaintiff admits the allegations of paragraph 35 of defendant's Counterclaim.

36.   Plaintiff admits the allegations of paragraph 36 of defendant's Counterclaim.

37.   Plaintiff admits the allegations of paragraph 37 of defendant's Counterclaim.

38.   The allegations contained in paragraph 38 of the "Misrepresentations" section of the Counterclaim are not directed at plaintiff and are a statement of a position of the defendant and to the extent that the allegations contained therein required a concurrence of the plaintiff, they are denied.

39.   Plaintiff denies the allegations of paragraph 39 of defendant's Counterclaim.

## MENDEZ'S TRUE MEDICAL CONDITION

40.   The allegations contained in paragraph 40 of the "Misrepresentations" section of the Counterclaim are not directed at plaintiff and are a statement of a position of the defendant and to the extent that the allegations contained therein required a concurrence of the plaintiff, they are denied.

41.   Plaintiff admits the allegations of paragraph 41 of

4

defendant's Counterclaim.

42.  Plaintiff denies the allegations of paragraph 42 of defendant's Counterclaim.

43.  Plaintiff denies the allegations of paragraph 43 of defendant's Counterclaim.

44.  Plaintiff denies the allegations of paragraph 44 of defendant's Counterclaim.

45.  Plaintiff denies the allegations of paragraph 45 of defendant's Counterclaim.

46.  Plaintiff denies the allegations of paragraph 46 of defendant's Counterclaim.

47.  Plaintiff denies the allegations of paragraph 47 of defendant's Counterclaim.

48.  Plaintiff admits the allegations of paragraph 48 of defendant's Counterclaim.

49.  Plaintiff admits the allegations of paragraph 49 of defendant's Counterclaim.

50.  Plaintiff admits the allegations of paragraph 50 of defendant's Counterclaim.

51.  Plaintiff admits the allegations of paragraph 51 of defendant's Counterclaim.

52.  Plaintiff admits the allegations of paragraph 52 of defendant's Counterclaim.

53.  Plaintiff denies the allegations of paragraph 53 of defendant's Counterclaim.

54.  Plaintiff denies the allegations of paragraph 54 of

defendant's Counterclaim.

55. Plaintiff denies the allegations of paragraph 55 of defendant's Counterclaim.

56. Plaintiff admits the allegations of paragraph 56 of defendant's Counterclaim.

57. Plaintiff denies the allegations of paragraph 57 of defendant's Counterclaim.

58. Plaintiff denies the allegations of paragraph 58 of defendant's Counterclaim.

59. Plaintiff denies the allegations of paragraph 59 of defendant's Counterclaim.

## THE MISREPRESENTATIONS WERE MATERIAL

60. Plaintiff denies the allegations of paragraph 60 of defendant's Counterclaim.

61. Plaintiff denies the allegations of paragraph 61 of defendant's Counterclaim.

62. Plaintiff denies the allegations of paragraph 62 of defendant's Counterclaim.

### COUNT I
### (Material Misrepresentation)

43. Plaintiff repeats and realleges her answers to the above allegations as if same were set forth herein at length.

44. Plaintiff denies the allegations of paragraph 44 of the Material Misrepresentation section (paragraphs are not sequential in the Counterclaim) of defendant's Counterclaim.

45. Plaintiff denies the allegations of paragraph 45 of the Material Misrepresentation section of defendant's Counterclaim.

46. Plaintiff denies the allegations of paragraph 46 of the Material Misrepresentation section of defendant's Counterclaim.

47. Plaintiff denies the allegations of paragraph 47 of defendant's Counterclaim.

### COUNT II
### (Fraud)

48. Plaintiff repeats and realleges her answers to the above allegations as if same were set forth herein at length.

49. Plaintiff denies the allegations of paragraph 49 of Count II of defendant's Counterclaim.

50.  Plaintiff denies the allegations of paragraph 50 of Count II of defendant's Counterclaim.

51.  Plaintiff denies the allegations of paragraph 51 of Count II of defendant's Counterclaim.

52.  Plaintiff denies the allegations of paragraph 52 of Count II of defendant's Counterclaim.

53.  Plaintiff denies the allegations of paragraph 53 of Count II of defendant's Counterclaim.

## COUNT III
### (Declaratory Relief)

54.  Plaintiff repeats and realleges her answers to the above allegations as if same were set forth herein at length.

55.  Plaintiff admits the allegations of paragraph 55 of Count III of defendant's Counterclaim.

56.  Plaintiff denies the allegations of paragraph 56 of Count III of defendant's Counterclaim.

57.  Plaintiff admits the allegations of paragraph 57 of Count III of defendant's Counterclaim.

## COUNT IV
### (Declaratory Relief)

58.  Plaintiff repeats and realleges her answers to the above allegations as if same were set forth herein at length.

59.  Plaintiff denies the allegations of paragraph 59 of Count IV of defendant's Counterclaim.

60.  Plaintiff denies the allegations of paragraph 60 of Count IV of defendant's Counterclaim.

61.  Plaintiff denies the allegations of paragraph 61 of Count

IV of defendant's Counterclaim.

62.   Plaintiff denies the allegations of paragraph 62 of Count IV of defendant's Counterclaim.

63.   Plaintiff admits the allegations of paragraph 63 of Count IV of defendant's Counterclaim.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

Plaintiff, Debby Mendez, incorporates herein the assertions and allegations as more fully set forth in her Complaint against American General Life Insurance Company.

### SECOND AFFIRMATIVE DEFENSE

The Counterclaim fails to set forth a cause of action upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff admits that a certain agreement was made and refers to the entire agreement for the contract between the parties and relies upon its provisions.

### FOURTH AFFIRMATIVE DEFENSE

Insofar as the Counterclaim asserts a cause of action based upon breach of contract, plaintiff denies that there was any breach, however, if such is found to have existed, plaintiff contends that the relief sought was not within the contemplation of the parties at the time of the making of the contract and further would not naturally result from any breach.

### FIFTH AFFIRMATIVE DEFENSE

All statements made by Jorge Mendez in his application for the

subject life insurance policy were truthful and accurate at the time the application was executed and therefore defendant's Counterclaim must fail.

### SIXTH AFFIRMATIVE DEFENSE

The statements made by Jorge Mendez in the reinstatement application for the subject policy were truthful and accurate at the time the reinstatement application for the policy was executed and therefore defendant's Counterclaim must fail.

### SEVENTH AFFIRMATIVE DEFENSE

Jorge Mendez never made any untruthful or inaccurate statements with respect to any application or reinstatement application for the subject policy at the time such documents were executed and therefore defendant's Counterclaim must fail.

### EIGHTH AFFIRMATIVE DEFENSE

Jorge Mendez provided accurate and truthful information with respect to Question No. 4 of the Reinstatement Application which is the only question that defendant American General requested that Jorge Mendez answer following its receipt of the Reinstatement Application and therefore defendant's Counterclaim must fail.

GARRITY, GRAHAM, MURPHY, GAROFALO
& FLINN
Attorneys for Plaintiff

By: _____S/Francis X. Garrity_____
FRANCIS X. GARRITY

Dated: January 11, 2010

10

# EXHIBIT D

491842.1



GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN
A Professional Corporation
One Lackawanna Plaza
P.O. Box 4205
Montclair, New Jersey 07042
973-509-7500
Attorneys for Plaintiff Debby Mendez
990.22450/FXG

|  |  |
|---|---|
| DEBBY MENDEZ,<br><br>        Plaintiff,<br><br>v.<br><br><br>AMERICAN GENERAL LIFE<br>INSURANCE COMPANY,<br><br>        Defendant. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION No. 09-cv-01155 (WJM)<br><br><br>**PLAINTIFF'S ANSWERS TO DEFENDANT**<br>**AMERICAN GENERAL LIFE INSURANCE**<br>**COMPANY'S FIRST SET OF**<br>**INTERROGATORIES TO PLAINTIFF** |

To:    Julie Erin Von Bevern, Esq.
        Robert P. Lesko, Esq.
        Wilson, Elser, Moskowitz, Edelman
        & Dicker, LLP
        33 Washington Street
        Newark, NJ 07102
        Attorneys for Defendant, American General Life Insurance Company

COUNSEL:

PLEASE TAKE NOTICE that in accordance with the Court Rules, Plaintiff, Debby

Mendez, hereby responds to defendant American General Life Insurance Company's

Interrogatories as follows:

1. Describe in detail any statements which you or anyone on your behalf has obtained from any person relevant to this action, or which you contend constitute admissions or declarations against interest made by or chargeable against any party. Include in your response the date, time and place that each such admission or declaration was made, identify the person(s) who made each such admission or declaration and set forth the substance of each such admission and/or declaration.

   **ANSWER:   Objection.   The question is improper.   Plaintiff objects to this Interrogatory on the ground that it seeks, or may be deemed to seek, to require plaintiff to formulate and express a legal opinion as to what constitutes an "admission" or "declaration against interest" in order to answer the question.**

   **Subject to, and without waiver or limitation of the foregoing objection, upon information and belief, plaintiff is unaware of any such statements made by defendant or its representative other than as was contained in their correspondence, but the plaintiff rendered a statement that was written by Kenneth Minnick, a representative of the defendant, and signed by plaintiff on March 31, 2008. The statement contains an error, relevant to the facts here, in that it states that Jorge Mendez saw his primary physician, a Dr. Alterman "in late April 2007". In fact, Jorge Mendez did not see Dr. Alterman in late April 2007 but rather saw Dr. John Dokko on April 24, 2007 (See: report of Dr. John Dokko dated April 26, 2007, plaintiff's Rule 26 Disclosures, Bates #DM0029.)**

2. Describe in detail any communications you have made with any person other than counsel concerning this litigation or any of the allegations contained in pleadings. Identify the person to whom the communication was made; why the communication was made; and if in writing identify and produce. If communication was an oral communication, set forth with as much particularity as possible the exact content of said discussions, and identify any documents relating to this discussion.

   **ANSWER:  None, except as between the party's attorneys and any references made in the Rule 26 Disclosures.**

3. Set forth all facts and occurrences that you contend establish your claim that Defendant is liable to you as alleged in the Complaint.  Identify all persons with relevant knowledge and all documents which refer or relate to your response to this Interrogatory.

   **ANSWER: Objection. Plaintiff objects to this Interrogatory to the extent that it calls for a legal conclusion as to what constitutes "facts and occurrences." Notwithstanding this objection and subject to same, plaintiff contends that pursuant to Defendant's life insurance policy issued to Jorge Mendez under which plaintiff is identified as beneficiary, she is entitled to receive the proceeds of the life insurance now that Jorge Mendez has died.**

13. Identify all legal actions, other than the present action, to which you have been a party at any time from January 1, 1999 to date. Include in your response the title of each case, the Court, the docket number and a brief description of each legal action and the disposition thereof. Identify all persons with relevant knowledge and all documents which refer or relate to your response to this Interrogatory.

**ANSWER: None.**

14. State whether you or any other person named in these answers has ever been charged with any criminal offense. If yes, with regard to each such conviction, state the present identity and address of the person(s) charged and identify the offenses subject of the charge; identity of the court, trial judge, and sentencing judge, sentence imposed; if imprisoned, the identity and address of the prison; and the dates of any probation or parole and the identity of the probation or parole officer.

**ANSWER: No.**

15. Set forth the time, date and location at which the Reinstatement Application leading to the reissuance of Renewable Term Level Benefit Term Life Policy No. YM00399560 by American General was executed by decedent Jorge Mendez and identify all persons present.

**ANSWER: The Reinstatement Application was executed on April 20, 2007 by Jorge Mendez. Plaintiff was present at the time of execution. The application was mailed to Jeffrey Greenberg on April 20, 2007 for transmittal to defendant. Based on the available documentation, it appears that Mr. Jeffrey Greenberg faxed the application to defendant on April 26, 2007.**

16. Set forth the time, date and location at which Question #4 on page 2 of the Reinstatement Application Section II-B was answered, dated and initialed by decedent Jorge Mendez, leading to reissuance of Renewable Term Level Benefit Term Life Policy No. YM00399560 by American General and identify all persons present.

**ANSWER: By letter dated May 2, 2007, defendant requested that Jorge Mendez respond to Question 4 on page 2 of the Reinstatement Application Section II-B. Mr. Mendez responded to that question on May 7, 2007 and plaintiff hand-delivered the document to Gary Haebler of Planning Consultants (Jeffrey Greenberg) for transmittal to American General. Upon information and belief, Gary Haebler returned it to the defendant. Plaintiff was present at the time Jorge Mendez responded, dated and initialed the response.**

## <u>CERTIFICATION</u>

I, Debby Mendez, hereby certify that the foregoing answers to interrogatories are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby certify that the copies of documents are true and accurate and that the reports annexed hereto provided by my proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said doctors or experts, either written or oral, are unknown to me, and if such become later known or available, I shall serve them promptly on the propounding party.

By: _____

DEBBY MENDEZ

Dated:

# EXHIBIT E

491842.1

PAGE 1 OF 5

DATE: 3-31-08

NAME: _____

ADDRESS: _____

01  THE FOLLOWING STATEMENT IS BEING
02  GIVEN BY THE BENFICIARY DEBBY MENDEZ.
03  THIS IS BEING GIVEN TO KENNETH MINNICK
04  OF ICS MERRILL ON BEHALF OF
05  AIG AMERICAN GENERAL LIFE INSURANCE
06  THIS CONCERNS THE INSURED JORGE
07  MENDEZ, DATE OF BIRTH,    -1955 SOCIAL
08  SECURITY NUMBER,    -2477. THIS COVERS
09  HEALTH BACKGROUND FROM 9-1996 TO THE
10  TIME OF DEATH 3-12-2008. THE INSURED
11  PAST AWAY ON 3-12-2008, AT OVERLOOK
12  HOSPITAL, SUMMIT, NEW JERSEY AS A RECULT
13  OF A BRAIN TUMOR. THE INSURED HAD BEEN
14  IN THIS FACILITY FOR APPROXIMATELY ONE
15  MONTH PRIOR TO DEATH, BEING TREATED FOR
16  COMPLICATIONS OF THE BRAIN TUMOR. AS
17  FOR THIS ILLNESS, HE FIRST SAW HIS PRIMARY
18  PHYSCIAN A DR. ALTERMAN, OF THE SUMMIT
19  MEDICAL GROUP, DIAMOND HILL ROAD, BERKLEY
20  HEIGHTS, N.J. IN LATE APRIL 2007. THIS
21  REASON FOR THIS WAS FOR HEADACHES THAT
22  HE HAD BEEN HAVING FOR 2 OR 3 DAYS.

DM000080  3/31/08

PAGE 2 OF 5

DATE: 3-31-08

NAME: _____

ADDRESS: _____

01 AFTER AN EXAMINATION, THE PHYSCIAN RECOMEN-

02 DED A M.R.I. WHICH WAS PERFORMED ON

03 APPROXIMATELY 4-29-2007, AT THE SUMMIT

04 MEDICAL GROUP. APPROXIMATELY 2 OR 3 DAYS

05 AFTER THIS WE WERE NOTIFIED OF THE

06 RESULTS BY THE OFFICE OF DR. ALTERMAN

07 THE M.R.I. RESULTS, AND FINDINGS OF THE

08 BRAIN TUMOR. HE THEN TREATED WITH A

09 DR. WILDMAN, WEST ORANGE, AT 100 NORTH-

10 FIELD AVENUE, WEST ORANGE, N.J. HE WAS

11 THEN ALSO SEEN BY A DR. LOUIS SCHWARTZ,

12 OVERLOOK HOSPITAL, SUMMIT, NEW JERSEY, WHO

13 IS A RADIOLOGIST. HE THEN BEGAN RADIOLOGY

14 TREATMENTS, AFTER BEING HOSPITALIZED AT

15 OVERLOOK FOR A CRAINENOMY ON 5-15-2007

16 HE WAS HOSPITALIZED FOR 2 DAYS AT THIS

17 HOSPITAL. HE ALSO THEN UNDERWENT ORAL

18 CHEMOTHERAPY UNDER THE CARE OF A

19 DR. MICHAEL GRUBEL, A NUEROONCOLOGIST,

20 AT OVERLOOK MEDICAL CENTER. THE CRAINONO

21 MY WAS PERFORMED BY A DR. HODASH, ANOTHER

22 PHYSCIAN AT OVERLOOK HOSPITAL.

Debra Y. DM000081          3/31/06

PAGE 3 OF 5
DATE: 3-31-08

NAME: _____

ADDRESS: _____

01 DURING THE TIME SPAN BETWEEN THE INITIAL
02 DIAGNOSIS AND 3-12-2008, HE WAS HOSPITALIZED
03 SEVERAL TIMES AT OVERLOOK HOSPI-
04 TAL DUE TO COMPLICATIONS THAT DEVELOPED
05 AS A RESULT OF HIS ILLNESS. ANOTHER
06 PRIMARY DOCTOR HE SAW DURING HIS ILLNESS
07 AND NOT PRIOR TO THE INITIAL DIAGNOSIS,
08 WAS A DR. QUAGILA, MILLBOURN, N.J. PRIOR
09 TO THE ILLNESS THE INSURED WAS ALWAYS
10 IN GOOD HEALTH, ONLY SEEING DR. ALTER-
11 MAN FOR YEARLY PHYSICALS. HE DID HAVE
12 A COLONSCOPY IN APPROXIMATELY 2001, BY A
13 DR. BELLADONNA, SUMMIT MEDICAL GROUP, OVER-
14 LOOK, N.J. WITH NORMAL RESULTS. HE HAD
15 NO OTHER HOSPITALIZATIONS, IN THE PAST THAT
16 I AM AWARE OF. HIS HEALTH INSURANCE
17 WAS THROUGH HORIZON BLUE CROSS GROUP
18 NUMBER 1136B-78. THE PHARMACY USED
19 DURING HIS ILLNESS WAS CVS, DEFORREST
20 AVENUE, SUMMIT, N.J. PRIOR TO THE ILL-
21 NESS HE DIDNOT TAKE ANY LONG-TERM
22 MEDICATIONS. AS FOR TOBACCO USE THE

3/31/08

DM000082

PAGE 4 OF 5

DATE: 3-31-08

NAME: _____

ADDRESS: _____

01 INSURED HAD SMOKED CIGGERRETTES, BUT

02 HAD QUIT SMOKING ALL TOGETHER IN

03 APPROXIMATELY 6-2005, AS SHOWN ON THE

04 APPLICATION. AS FOR EMPLOYMENT HE WAS

05 OWNER OPERATOR OF A ACE PAINTING, INC.

06 42 MAPLE STREET, CHATHAM, N.J. 07928.

07 HE WAS OWNER OPERATOR OF THIS PAINTING

08 BUSSINESS FOR APPROXIMATELY 22 YEARS.

09 HE WAS INVOLVED MAINLY IN RESIDENTIAL

10 PAINTING. HE NEVER HAD ANY LONG-TERM HEALTH

11 OR INJURY PROBLEMS THAT KEPT HIM OUT

12 OF WORK FOR AN EXTENDED PERIOD. MY

13 FINANCIAL ADVISOR IS THE WRITING AGENT

14 OF THIS POLICY JEFFREY GREENBERG, 568

15 SOUTH LIVINGSTON AVENUE, LIVINGSTON, N.J.

16 07039. AS FOR FINANCIAL INFORMATION

17 THAT IS NEEDED, COVERING TAX DOCUMENTS

18 FROM 2004, 2005, 2006, THIS ALONG WITH

19 OTHER PERSONAL ASSET INFORMATION

20 SUCH AS HOME OWNERSHIP, INVESTMENTS

21 SUPPORTING NET WORTH WILL BE SUPPLIED

22 BY MY FINANCIAL ADVISOR.

3/31/08

DM000083

PAGE _5_ OF _5_

DATE: _3-31-08_

NAME: _____

ADDRESS: _____

01  MY FINANCIAL ADVISOR'S PHONE NUMBER
02  IS 973 994-7155. I THE UNDERSIGNED
03  HAVE READ THE ABOVE STATEMENT OF
04  4 PAGES AND 2 LINES TO THE BEST OF MY
05  KNOWLEDGE IT IS A TRUE STATEMENT
06  AND I HAVE RECEIVED A COPY OF
07  THE STATEMENT.
08  WITNESSED BY _____
09  _____
10  (604)610-8188. _____
11  _____ 3/31/08
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____

DM000084

# EXHIBIT F

491842.1

Note Display

Atlantic Brain & Spine, LLC                                    Exit

Mendez, Jorge, A - Note

Created by: T Wilson
On: 05/08/2007 At: 11:38AM

*Notes*

| | | | |
|---|---|---|---|
| Subject: | Surgical Planning/ Medication | Status: | Closed |
| Category: | Patient | Type: | Hospital & Surgical |
| Source: | | Bill #: | 0 |
| Alert Users: | No | Case: | Standard Case |
| Tickler Dt: | | | |

Mrs. Mendez stated she would like to proceed with scheduling surgery.

She also stated if he:
(1)should start Dilantin Rx & maintain 6mg Decadron dosage.
(2) Has no headaches
(3) Insurance Acceptance
(4) Dr. Gruber & Insurance. . . . Per RMH Dilantin 100mg tid, Keep Decadron @ current dosage. Has not talked to Gruber & Will accept in lue of Co-insurance & Deductable if applicable. . . .

Description:  No Current Attachment
Type:
Format:

**Create Attachment**

**Edit Note**        **Cancel**        **Delete Note**

Copyright© 2000
Doc-tor.com

https://websrv01.physician-to-go.net/proxy.cgi/apps/l...=acct=3268158|seq=3|owner=twolfscn&title=Note Display [4/16/2008 1:13:16 PM]

AGLIC 000738