UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBBY MENDEZ,<br><br>               Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE<br>INSURANCE COMPANY,<br><br>               Defendant. | Civil Action No. 09-cv-01155<br><br>**SUPPLEMENTAL CERTIFICATION OF KEVIN C. DONOVAN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT AND FOR ENTRY OF JUDGMENT ON ITS COUNTERCLAIMS**<br><br>**FILED ELECTRONICALLY** |

KEVIN C. DONOVAN, of full age, hereby certifies as follows:

1.    I am an attorney admitted to plenary practice before this Court, and a member of the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP., attorneys for defendant American General Life Insurance Company ("American General" or "defendant") in this matter. I submit this Supplemental Certification in support of Defendant's Motion for Summary Judgment Dismissing the Complaint and for Entry of Judgment on its Counterclaims pursuant to Fed. R. Civ. P. 56.

2.    This Certification supplements my earlier Certification executed on March 2, 2010 and served in connection with Defendant's Motion.

      3.      Attached hereto as Exhibit A are true and correct copies of the following pages of the Brief In Support of plaintiff Debby Mendez's Motion For Summary Judgment dated March 3, 2010, previously served in this matter: 4; 5; 9; 10; 11; 13 and 24. These pages include statements of plaintiff's counsel referenced in Defendant's Reply Brief on this Motion.

      I certify under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2010.

                                                          _/s/ Kevin C. Donovan_
                                                            KEVIN C. DONOVAN

# EXHIBIT A

491842.1

GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN
A Professional Corporation
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, New Jersey 07936
973-509-7500
Attorneys for Plaintiff Debby Mendez
990.22450FXG

| | |
|---|---|
| DEBBY MENDEZ,<br><br>     Plaintiff,<br>v.<br><br>AMERICAN GENERAL LIFE<br>INSURANCE COMPANY,<br><br>     Defendant. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION No. 09-cv-01155 (WJM) |

## BRIEF IN SUPPORT OF PLAINTIFF DEBBY MENDEZ'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Francis X. Garrity, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

American General issued its notice of reinstatement, American General contends that Jorge was under an obligation to inform American General's underwriter of the change in his health so that American General could consider his diagnosis in its decision as to whether to reinstate the policy.

Plaintiff's position is that Jorge's diagnosis of a brain tumor **after** submission of the reinstatement application relieves him of any obligation to inform American General of his diagnosis.

American General, in further support of its claims, next points to the "acknowledgement" provision in the reinstatement application executed by Jorge. This acknowledgement purports to suggest that the policy is not reinstated until American General passes upon the application and reinstates the policy. Further, American General points to the case law regarding initial applications for life insurance. The problems with the positions advanced by American General are threefold. First, the rights and obligations of the insured and the insurance company are exclusively determined by the contract. If the risk in the change of the insured's health passed to the insurer after submission of the reinstatement application, then the insurer must accept that risk. Consequently, cases addressing initial policy applications for life insurance, prefatory to the formation of a contract, are totally irrelevant here.

Second, because the rights of the parties are controlled by the contract, the "acknowledgment" provision in the reinstatement application, to the extent that it conflicts with the contract, is unenforceable. Third, American General's obligations under the contract, beyond being controlled by the contract terms, are governed by N.J.S.A. 17B:25-9 ("the statute"). To the extent that American General's position

4

conflicts with the commands of the statute, it is invalid and unenforceable.

Therefore, based on the foregoing, and as will be discussed <u>infra</u>, Plaintiff's position is that the life insurance policy was properly reinstated by Jorge's acceptance of American General's offer to reinstate. At the moment Jorge submitted his factually correct reinstatement application to American General, the policy was successfully reinstated. The policy proceeds should thus be paid by American General to Plaintiff as she is Jorge's designated beneficiary.

## LEGAL ARGUMENT

### POINT I

UNDER THE TERMS OF THE AMERICAN GENERAL POLICY, THE RISK IN A CHANGE IN THE INSURED'S HEALTH, AFTER THE SUBMISSION OF THE REINSTATEMENT APPLICATION, IS BORNE BY THE INSURANCE COMPANY.

#### A. Background and Introduction

The case at bar involves the straightforward question of who bears the risk in the change of health of the insured, **after** the insured submits a truthful and factually correct reinstatement application to the insurance company. In order to resolve this issue, an understanding of the differences between an initial application for life insurance and a reinstatement application is essential.

In an initial application for life insurance, no offer is made by the insurance company until it has had the opportunity to review and analyze all the pertinent information relating to risk, including the health of the applicant. Therefore, when there is a change in the health status of an applicant during the initial application process, the applicant is duty-bound to notify the insurance company that there has been a change in his health. The insurance company must have this information if it is to be able to make

with the applicant, as no contract yet binds the parties. In a reinstatement application, however, a contract is already in place between the insured and the insurance company. Here, the policy terms regarding reinstatement are valid and enforceable, and when Jorge sent his reinstatement application to the insurance company, the policy was automatically reinstated. Indeed, American General had the right and the opportunity to review Jorge's insurability. The insurance company did so, and being satisfied, it reinstated Jorge's policy.

American General asserts that Jorge was under an obligation to inform the insurance company of the brain tumor so that it could consider that medical condition in its assessment as to whether to reinstate Jorge's policy. In fact, there was no such obligation on Jorge's part. The insurance benefits of the policy that had been suspended when the policy went into lapse, were, **by operation of the policy terms**, automatically reinstated upon submission of the reinstatement application. Jorge's only charge was to be truthful on his reinstatement application. Jorge was truthful, and once he transmitted the reinstatement application to American General, the policy was reinstated. Therefore, there was no requirement that Jorge advise the insurance company of his brain tumor. The policy had been reinstated upon submission of Jorge's reinstatement application. The application undeniably contained truthful responses to American General's questions.

As will be discussed below, Plaintiff's argument is soundly supported by a multitude of cases as well as by New Jersey statute.

## B. The Terms of the American General Policy Constitute an Offer of Reinstatement that Jorge Accepted by Submitting the Reinstatement Application.

In the policy at issue, the reinstatement provision in the American General policy could not be clearer. It plainly states that:

> REINSTATEMENT
>
> If this policy lapses, it may be reinstated within five years after the date of default. We will require the insured to submit evidence of insurability which is satisfactory to us.
>
> Reinstatement will also be subject to payment of the premium for the grace period with interest at 6% per year compounded annually plus the premium due for the current policy month.
> (Joint Stipulation of Facts, ¶19, Exhibit A, at page 5)

There is no room for ambiguity in these words. Upon the insured demonstrating proof of insurability and upon payment of the past due premiums, the policy will be reinstated. The process for reinstatement of a policy is so simple and straightforward precisely because it is in the insurance company's financial interests to recapture customers whose policies have lapsed.

The insurer chose to write the policy in this fashion. It did not require a re-examination or submission of Jorge's updated medical records. The insurer required only that the insured answer the questions on the reinstatement application and submit the reinstatement application to the insurer. If the answers were true and complete at the time of the response and submission, the insurance benefits were automatically restored upon transmittal. Indeed, this process is completely different than an initial application for insurance.

There are several easily understood reasons for this "streamlined" process. Insurance companies earn money from insurance that is in effect and for which they are collecting premiums. No profit comes from a policy in lapse. Since the insurance

company has already incurred the cost of a physical examination of the insured and reviewed his medical records to its satisfaction, there is no need to go through the whole process again. Further, the agent's commission is primarily paid from the first year's premium. Thus, when all of these expenses have already been incurred and paid by the insurer and the risk is found to be acceptable, it is in the insurer's interest to "streamline" the process if there is a default in the premium payments and reinstate the policy with payment of the past due premiums.

It is true that the insurer could provide for an exhaustive reinstatement process. But then the company would risk an insured choosing to forego that process and leave the policy in lapse and perhaps never have it reinstated. On the other hand, the insurer could provide for ease of reinstatement, e.g., having the insured simply respond to a health questionnaire and provide for immediate reinstatement. An easier process means that the insurer must accept a change in the health of the insured after the submission of the reinstatement application. But it also means that more policies will be reinstated. The insurer can account for this risk simply by actuarially building it into the premium.

The reinstatement provisions are nothing less than an offer by the insurance company to reinstate the policy. This offer, rather than being independent of the original life insurance policy, is a provision of the policy, and cannot be construed as an invitation to create a new agreement between the company and the insured. Acceptance of the offer to reinstate is effectuated when the insured fully complies with the terms of reinstatement application.

There is a rationale for the policy provision for easy reinstatement. Because the insurance company has already evaluated the risk at the inception of the policy, it does

11

reinstated on May 24, 2007.

What American General is contriving to accomplish here is an attempt to modify the terms of its own contract (the life insurance policy) with Jorge, by seeking to impose new conditions that appear <u>nowhere</u> in the policy agreement. American General claims that, because Jorge knew of his diagnosis of a brain tumor between April 29, 2007 and May 24, 2007, Jorge was somehow obligated to inform the insurance company of his medical status.

However, no such obligation existed on Jorge's part. As required by the insurance company's own provisions, Jorge submitted proof of insurability and paid the past due premiums. When Jorge submitted the reinstatement application to American General's agent, the reinstatement was effective. By seeking to evade the terms of its own reinstatement provisions, American General is attempting to modify the life insurance policy, a binding contract, without providing the necessary consideration to Jorge. The requirements of an insurance company's reinstatement form cannot create obligations on the part of the insured greater than those specified in policy, since the policy and the application by the terms of the standard policy provisions constitute entire the contract between the company and the insured. <u>Bruni v. Prudential Life Ins. Co. of America</u>, 51 <u>N.J.</u> 408 (1968).

Therefore, Jorge's policy was reinstated when Jorge sent his reinstatement application to American General. Jorge's submission of the reinstatement application was his acceptance of American General's offer to reinstate. Any claim to the contrary is without merit, as it contradicts American General's own reinstatement provisions.

13

## CONCLUSION

For the foregoing reasons Plaintiff Debby Mendez respectfully requests that the Court issue an Order that Defendant American General pay the $1.2 million proceeds to Plaintiff.

Respectfully submitted,

Garrity, Graham, Murphy, Garafalo & Flinn

By: _____
Naveen M. Nadipuram, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

Date: March 3, 2010