GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN
A Professional Corporation
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, New Jersey 07936
973-509-7500
Attorneys for Plaintiff Debby Mendez
990.22450FXG

|  |  |
|---|---|
| DEBBY MENDEZ,<br><br>              Plaintiff,<br><br>v.<br><br><br>AMERICAN GENERAL LIFE<br>INSURANCE COMPANY,<br><br>              Defendant. | **UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION No.  09-cv-01155 (WJM) |

## BRIEF IN SUPPORT OF PLAINTIFF DEBBY MENDEZ'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Francis X. Garrity, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………….. ii

STATEMENT OF UNDISPUTED MATERIAL FACTS………………...iv

PRELIMINARY STATEMENT…………………………………………..1

LEGAL ARGUMENT……………………………………………………5


**POINT I**
UNDER THE TERMS OF THE
AMERICAN GENERAL POLICY,
THE RISK IN A CHANGE IN
THE INSURED'S HEALTH,
AFTER THE SUBMISSION OF THE
REINSTATEMENT APPLICATION,
IS BORNE BY THE INSURANCE COMPANY…………………………5

   A.  Background and Introduction………………………………………5
   B.  New Jersey's Treatment of the Effective Date of Reinstatement…..11
   C.  The American General Reinstatement Provision………………….12
   D.  The New Jersey Reinstatement Statute………………………….15
   E.  Consistency of New Jersey Law with that of Other Jurisdictions….17
   F.  Reinstatement of the Policy Relates Back to
      the Date of Submission of the Reinstatement
      Application………………………………………………………21
   G.  The Consonance of the Majority View that Reinstatement Occurs
      Upon Application with the Holding
      of the United States Supreme Court……………………………….23
   H.  American General's Method of Doing Business…………………..25

**POINT II**
NO ISSUE OF FACT EXISTS THAT WOULD
JUSTIFY ALLOWING AMERICAN GENERAL
TO DENY ITS OBLIGATION TO PAY THE
PLAINTIFF THE POLICY'S PROCEEDS……………………………..28


CONCLUSION…………………………………………………………..29

i

## TABLE OF AUTHORITIES

**Rules**
F.R.C.P. 56(c)

**Statutes**
N.J.S.A. 17B:25-9

**Treatises**
Appleman on Insurance §179.03 at 275 (2d Ed. 2006)

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

Barfield v. Wilson, 669 S.W.2d 91 (Tenn. 1984)

Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008)

Bowie v. Bankers Life Co., 105 F.2d 806 (10th Cir. 1939)

Bruegger v. National Old Line Insurance Company, 387 F.Supp. 1177 (D. Wyo. 1975)

Bruegger v. National Old Line Insurance Company, 529 F.2d 869 (10th Cir. 1976)

Bruni v. Prudential Life Ins. Co. of America, 51 N.J. 408 (1968)

Chamberlain v. Giampapa, 210 F.3d 154 (3rd Cir. 2000)

Consumer First Ins. Co. v. Lee, 2009 WL 425948 (App. Div. Feb. 24, 2009)

Depositors Trust Company v. Farm Family Life Insurance Company, 445 A.2d 1014, 1020 (Maine 1982)

Equitable Life Assur. Soc. of U.S. v. Rothstein, 195 A. 723 (N.J. Ch. 1937)

First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 137 (2003)

Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833 (Ill. 1940)

Illinois Bankers Life Ass'n of Monmouth, Ill. v. Palmer, 56 P.2d 370 (Okla. 1936)

Keene Corp. v. Ins. Co. of North America, 667 F.2d 1034 (D.C. Cir. 1981)

Kennedy v. Occidental Life Ins. Co., 117 P.2d 3, 5 (Cal. 1941)

<u>Merkle v. Upper Dublin Sch. Dist.,</u> 211 <u>F.3d</u> 782 (3d Cir. 2000)

<u>Montgomery Ward & Co. v. Pacific Indemnity Co.,</u> 557 <u>F.2d</u> 51 (3rd Cir. 1977)

<u>Muckler v. Guaranty Fund Life Ass'n,</u> 208 <u>N.W.</u> 787 (S.D. 1926)

<u>Mutual Ben. Life Ins. Co. v. Higginbotham,</u> 95 <u>U.S.</u> 380 (1877)

<u>New York Life Ins. Co. v. Weiss,</u> 32 <u>A.2d</u> 341 (N.J. E.&A. 1943)

<u>Officer v. New York Life Ins. Co.,</u> 216 <u>P.</u> 253 (Colo. 1923)

<u>Rothschild v. New York Life Ins. Co.,</u> 162 <u>A.</u> 463 (Pa. Super. Ct. 1932)

<u>Prudential Life Ins. Co. of America v. Connallon,</u> 154 <u>A.</u> 279 (N.J. E.&A. 1931)

<u>Prudential Life Ins. Co. of America v. Union Trust Co.,</u> 105 <u>N.E.</u> 505 (Ind. Ct. App. 1914)

<u>Republic Life Ins. Co. v. Craige,</u> 100 <u>P.2d</u> 281 (Okla. 1940)

<u>Ryman v. American National Ins. Co.,</u> 488 <u>P.2d</u> 32 (Cal. 1971)

<u>Schmidt v. Smith,</u> 155 <u>N.J.</u> 44 (1998)

<u>Union Central Life Ins. Co. v. Merrell,</u> 184 <u>S.E.</u> 655, 657 (Ga. Ct. App. 1936)

<u>Voorhees v. Preferred Mutual Ins. Co.,</u> 128 <u>N.J.</u> 165 (1992)

<u>Wichman v. Met. Life Ins. Co.,</u> 96 <u>S.W.</u> 695 (Mo. Ct. App. 1906)

## STATEMENT OF UNDISPUTED MATERIAL FACTS SET FORTH PURSUANT TO LOCAL RULE 56.1

For the Plaintiff's Statement of Undisputed Material Facts, the Court is respectfully directed to the Joint Stipulation of Facts, signed by counsel for both parties, and attached to Defendant American General Life Insurance Company's motion papers.

## PRELIMINARY STATEMENT

This case is before the Court because of American General Life Insurance Company's ("American General") failure to pay the proceeds of Jorge Mendez's ("Jorge") $1.2 million life insurance policy to the designated beneficiary, Debby Mendez ("Plaintiff"). This Court is confronted with the following issue: in the context of a life insurance policy, who bears the risk of a change in the insured's health, the insurer or the insured, **after** the submission of a reinstatement application to the insurer?[1] Stated differently, when a life insurance contract has lapsed, but the contract by its provisions and the governing statute, provide that the policy will be reinstated upon proof of insurability, is an offer of reinstatement by the insurer accepted by the policyholder upon submission of his application for reinstatement and his proof of insurability, thereby transferring to the insurer the risk of any later change in the insured's health?

Plaintiff Debby Mendez, surviving spouse of the insured decedent Jorge, asserts that the life insurance contract's provisions providing for reinstatement within five (5) years of lapse is an option, or offer to reinstate. This option is offered by the life insurance company as an inducement to the policyholder to reinstate the policy. As an offer, the option to reinstate can be accepted within the stated time period by the policyholder's compliance with the requirements for acceptance.

In this case, the policy's requirement for acceptance of the offer to reinstate is nothing more than submission to the insurance company of the application for reinstatement with proof of insurability and payment of the overdue premium. Once the

---

[1] Reference is made to "the risk in change of health" because this case centers upon the diagnosis of a brain tumor in the insured *after* the submission of the insured's life insurance reinstatement application to the insurer. It is important to recognize that death is a "change in health," and thus, the issue before this Court encompasses not just a diagnosis but death as well.

1

policyholder accepts the option to reinstate, the policy is reinstated. Reinstatement of the policy occurs despite the fact that there is a time delay before the insurance company passes upon the evidence of insurability, and receives the overdue premium. If the policyholder establishes proof of insurability and pays the premium, the reinstatement relates back to the date of the application for reinstatement. Accordingly, during the period between submission of the reinstatement application and ultimate review by the insurer of the insured's evidence of insurability, and receipt of the premium, the risk of a change in the insured's health, including death, passes to the insurer.

The terms of an application for reinstatement of a policy should be contrasted with an initial application for a life insurance policy. Because an application for reinstatement is grounded in the insurance contract itself, the law treats it differently than an initial application for insurance.

During the initial application for a life insurance policy, no contract has yet formed, and no contract will be formed until the insurance company has fully assessed the risk, and has offered to insure the life of the applicant to a certain amount at an identified premium. This offer by the insurance company is accepted by the policyholder when he pays the premium. At that point, a contract has been formed. The law recognizes that, during the application process, **because no contract exists**, the insurance company has the right to be informed of any material change in the prospective insured's health that develops during the application process. This is eminently reasonable, as the insurance company is basing its decision to offer to insure the applicant's life on the information supplied by the applicant. If the initial information supplied by the applicant proves to be incorrect because of a change in health, the law requires that the applicant

inform the insurance company of that change, so that the company's offer to insure, or its decision not to offer to insure, properly takes into account the risk.

On the other hand, with a reinstatement application, the parties have agreed to the terms of the life insurance contract. The company has, as part of its obligation to the policyholder, agreed to offer to reinstate the policy upon lapse. The law provides that this offer may be accepted by the policyholder by submitting a written request for reinstatement and offering proof of insurability. Upon such a submission, there is acceptance by the policyholder, the policy, as provided by its terms, being automatically reinstated even though the company may not pass upon the evidence offered in support of insurability until a later time.

Recognition of the law's treatment of the differences between these two scenarios is crucial to the outcome of this case. Plaintiff's decedent, Jorge, was diagnosed with a brain tumor **after** he completed and submitted his application for reinstatement to American General. Indeed, Jorge did not die during the period between his application and the insurance company's approval of his insurability, but the issue here is who bears the risk of a change in health (diagnosis of a tumor or death) during this period. While diagnosed with a tumor, Jorge could have been struck and killed by a bus. The issue would remain the same—who bears the risk of a change in Jorge's health?

Plaintiff's position is that upon the submission of the reinstatement application to American General, Jorge had accepted American General's offer to reinstate, automatically triggering the policy's reinstatement. Therefore, Jorge's later diagnosis with a brain tumor is irrelevant, as the risk of a change in Jorge's health had passed to American General with the reinstatement of the policy. Jorge had accepted American

3

General's offer to reinstate before he knew of the change in his health status. As such, Jorge was not required to inform the insurance company of the change in his health.

American General makes the claim that an application for the reinstatement of a life insurance policy that has lapsed should be treated in the same fashion as an initial application. American General asserts that the life insurance policy was not reinstated until its underwriters had passed upon the proof of Jorge's insurability, i.e. Jorge's responses to the questions concerning his health in the reinstatement application, and the premium check had cleared Jorge's account. Since Jorge was diagnosed with a brain tumor after he submitted the reinstatement application, American General contends that Jorge was under an obligation to inform American General's underwriters of the change in his health so that they could consider his diagnosis in passing upon Jorge's insurability to determine whether to reinstate the policy. The insurance company's stance is that Jorge had the obligation to inform it of his diagnosis, right up to the point in time that his premium check cleared, because it was not until then that the reinstatement occurred.

As can be seen, the positions of the Plaintiff and American General are in stark contrast to each other. Plaintiff contends that the policy was reinstated upon Jorge's acceptance of the insurance company's offer of reinstatement. Plaintiff also argues that the insurance company's approval of Jorge's insurability and the payment of the premium at a later point in time did not delay reinstatement. Once those contingencies were met, reinstatement related back to the date of the application for reinstatement.

Plaintiff here relies upon the American General policy; the New Jersey statute governing reinstatement; a controlling decision from New Jersey's highest court; decisions from other jurisdictions reflecting the majority rule; and even a United States

Supreme Court case addressing when a reinstated life insurance policy takes effect.

Because reinstatement of the insurance policy occurred at the time of submission, and because Jorge's insurability was measured at that point in time, Jorge was under no obligation to inform the insurance company of his change in health. The risk of a change in health had passed to American General upon reinstatement of the policy.

The insurance company puts forth the claim that the reinstatement did not occur until its underwriters had passed on, and approved, Jorge's insurability and his premium check had cleared his account. Notwithstanding this position, American General cannot point to any provision in its policy so providing; cannot reconcile the New Jersey statute governing reinstatement with its position; cannot distinguish the case decided by New Jersey's highest court addressing when reinstatement takes place; cannot address the controlling law of contracts regarding reinstatement; and cannot offer **any** decision consistent with New Jersey law governing the construction of insurance policies, life insurance or otherwise.

## LEGAL ARGUMENT

### POINT I

UNDER THE TERMS OF THE AMERICAN GENERAL POLICY, THE RISK OF A CHANGE IN THE INSURED'S HEALTH, AFTER THE SUBMISSION OF THE REINSTATEMENT APPLICATION, IS BORNE BY THE INSURANCE COMPANY.

## A. Background and Introduction

The case at bar involves the straightforward question of who bears the risk of a change of health in the insured, **after** the insured submits a truthful and factually correct reinstatement application to the insurance company. American General relies upon the long established case law holding that an applicant for life insurance has an obligation to

inform an insurance company of a change in health that occurs during the application process.   Plaintiff does not dispute the obligation, insofar as *initial* applications are concerned.   However, Plaintiff asserts that this rule of law has **no applicability** to an application for reinstatement of a life insurance policy, which is controlled by the reinstatement provision of the insurance policy.   In order to resolve this issue, an understanding of the differences between an initial application for life insurance and a reinstatement application is essential.

In an initial application for life insurance, no offer is made by the insurance company until it has had the opportunity to review and analyze all of the pertinent information relating to the risk, including the health of the applicant.   Therefore, when there is a change in the health status of an applicant during the initial application process, the applicant is duty-bound to notify the insurance company that there has been a change in his health.   The insurance company must have this information if it is to be able to make an informed decision as to whether to offer to insure.   See First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 137 (2003).

If there is a change in the health of the applicant between the time the initial application is submitted to the insurance company and the time the when the company acts on that application, the risk of a decline in health, and even the risk of death, remains with the applicant.   At this point, no contract exists between the company and the applicant, and the company bears no risk nor owes any duty to the applicant, who as yet remains only a prospective insured.

A reinstatement application, however, operates differently.   A reinstatement application is submitted by an insured pursuant to a contract that is already in place –

6

namely, the life insurance policy. Even when the policy is in lapse (due to the insured's failure to pay premiums), while the life insurance benefits are suspended, the contract between the insured and the company remains in force to the extent of the provisions still in effect. Thus, if the insured dies when the policy is in lapse, the company is not obligated to pay a beneficiary any of the proceeds. On the other hand, the policy still provides a "benefit" to the insured. When the policy is in lapse, while no proceeds may be paid, the insured has a right to reinstatement that can be redeemed if he completes a reinstatement application. If the insured demonstrates proof of insurability, the insurance company is bound, by the terms of its own policy as well as by statute, to reinstate the policy.

Therefore, at the center of the controversy between the parties is the date when the life insurance policy was reinstated. The court must determine the effective date of the reinstatement because that date will control whether the response to American General's Reinstatement Application provided by Jorge were true and complete. Plaintiff asserts that the policy was reinstated on April 26, 2007, the date Jorge forwarded to American General his application for reinstatement and proof of insurability.

Plaintiff contends that the accuracy of Jorge's responses to the Reinstatement Application must be measured by Jorge's knowledge of his health **on the date he completed** the Reinstatement Application. Indisputably, it was after this date that plaintiff's decedent was diagnosed with a brain tumor, a diagnosis that was confirmed on May 17, 2007. Plaintiff contends that the policy was reinstated by operation of law and the policy's own terms at the time Jorge accepted the insurer's offer of reinstatement. The insurance contract was thus in force, and the risk of a change in the decedent's health

7

transferred to American General on April 26, 2007.  Consequently, Plaintiff submits that Jorge **was not obligated to inform** the insurer of a change in his health.

It is American General's position that the policy was not reinstated until May 24, 2007.  What is the "magic" of this date?  American General maintains its position that the policy was not reinstated until each of the following occurred:  (1) Mendez submitted his application for reinstatement; (2) the application was reviewed by American General's underwriters and approved; (3) Mendez submitted the overdue premium; and (4) the premium had cleared the Mendez account.  Since the Mendez check cleared the account on May 24, 2007 American General's position is that the policy was not reinstated until that date.  Accordingly, the insurance company asserts that any change in health from the date of submission of the application, i.e. from April 26, 2007, to the purported date of reinstatement, i.e. May 24, 2007, must be reported to American General so that it can be considered in determining whether to reinstate the policy.

If American General's position were correct, if Jorge had been struck by a bus and killed between April 26, 2007 and May 24, 2007, no insurance would be in place.  This is because his death would qualify as a "change in health" that would have to be reported to its underwriters so that they could consider that change in determining whether or not to reinstate the policy.  Again, the insurance company's position is that during this "review period," i.e. the time period between submission of the Reinstatement Application and final clearance of the check for overdue premiums, the risk of death or a change in health remains with the policyholder and has not been transferred to the insurance company.

Plaintiff's position is that the risk of a change in health, or death, passed to

American General at the point in time when Mendez submitted the application for reinstatement to American General, i.e. April 26, 2007.   Plaintiff's position is that submission of the written application for reinstatement qualified as "acceptance" by the policyholder of American General's "offer" of reinstatement.   Her position is supported by elementary principles of insurance and contract law, the policy issued by American General, the New Jersey statute governing reinstatement, and case law in New Jersey governing the date when reinstatement takes place.   Uniformly, under the contract and the law, reinstatement takes place upon submission of the written application to American General.

Under New Jersey law, a "reinstated" contract or policy of life insurance qualifies as a "new" contract.   <u>New York Life Ins. Co. v. Weiss</u>, 32 <u>A.2d</u> 341, 342 (N.J. E. & A. 1943) (holding reinstatement of a life insurance contract is a separate and distinct contract from the original).   If a reinstated life insurance policy qualifies as a "new" contract, it is important to examine how the contract is formed and the substance of it. As with any contract, offer and acceptance must be present for the law to recognize a contract as a contract.   It is also important to fully comprehend what an insurance contract is in order to understand how one is formed.   When addressing a liability insurance policy, Judge Bazelon described the insurance contract as follows:

> An insurance contract represents an exchange of an uncertain loss for a certain loss.  By issuing the policy, the insurer agrees to assume the risk of the insured's liability in exchange for a fixed sum of money.  At the heart of the transaction is the insured's purchase of certainty – a valuable commodity.
> [<u>Keene Corp. v. Insurance Co. of North America</u>, 667 <u>F.2d</u> 1034, 1041-1042 (D.C. Cir. 1981)]

When Judge Bazelon referred to the insured's "purchase of certainty" he was referring to the insurer's promise or covenant to accept the risk of the uncertain.   In the case of a

liability insurance policy, the "uncertain" is the risk of liability.  The insurance contract represents a transfer of the "risk" of liability to an insurer in exchange for the payment of premium – a certainty.

This principle applies equally to a life insurance contract.  The contract represents the transfer of the risk of death, i.e., the risk of death during the policy period, to the insurer in exchange for the payment of premium.  Of critical importance is when the contract is formed because that determines when the risk is transferred.

Here, American General asserts that the new "contract," i.e. the reinstated life insurance policy, was not formed until May 24, 2007 – the date when Mendez's check cleared his account.  Thus, the insurance company's position is that the risk of a change in Jorge's health, or the risk of his death, did not shift to American General until May 24, 2007.  Plaintiff, on the other hand, asserts that the risk of a change in Jorge Mendez's health, or the risk of his death, passed to the insurance company on April 26, 2007 – the date when Jorge Mendez sent the completed and truthful Reinstatement Application to American General.

Quite clearly, at the center of the controversy between plaintiff and American General is the issue of when the policy was reinstated.  Once the court determines when the policy is reinstated, i.e. when acceptance of the offer occurred, that determination will answer the last question of who bore the risk of a change in health, i.e. the risk of insurability, during the period from April 26, 2007 to May 24, 2007.

Inasmuch as the American General policy was issued in New Jersey to a New Jersey insured, the law of New Jersey applies to its construction.  Chamberlain v. Giampapa, 210 F.3d 154 (3rd Cir. 2000).  As a Federal Court, this Court is bound by New

Jersey's assessment of when reinstatement of a lapsed policy occurs.  Montgomery Ward & Co., Inc. v. Pacific Indemnity Co., 557 F.2d 51 (3rd Cir. 1977).  New Jersey's highest court has addressed this issue and determined that reinstatement takes place at the point in time when the written application requesting reinstatement occurs.

## B. New Jersey's Treatment of the Effective Date of Reinstatement

In New York Life Ins. Co. v. Weiss, 32 A.2d 341 (N.J. E & A 1943) the Court of Errors and Appeals of New Jersey addressed the issue of when reinstatement was effective in a life insurance case.  The insurance company filed an action seeking to rescind a reinstated policy on the grounds that the policyholder had misrepresented the state of his health in responding to a question on the reinstatement application submitted to the insurer on November 10, 1937.  Of course, in its action for rescission the insurer sought a determination that the policy was void ab initio, i.e. void at the time of its formation.  See Prudential Ins. Co. of America v. Connallon, 154 A. 729 (N.J. E.&.A. 1931); Equitable Life Assur. Soc. of U.S. v. Rothstein, 195 A. 723 (N.J. Ch. 1937).  Thus the issue of when the contract was formed was squarely before the court.

While denying the misrepresentation, the policyholder contended that the insurance company had accepted the premium for the reinstatement with full knowledge of the facts.  In its decision the court first noted the effective date of reinstatement, holding that the policy was reinstated on November 10, 1937, the date the written application was submitted to the insurance company.  Id. at 341.

The court then went on to hold that the responses of the policyholder to the questions on the reinstatement application qualified as material misrepresentations, and thus the insurance company had the right to rescind the contract as of November 10,

11

1937, the date on which the policyholder applied for reinstatement of the policy.  Id. at 342-343.   Thus, the court, in its opinion, expressly addressed when the policy was reinstated, i.e. upon submission of the reinstatement application, while holding that the policy would be void ab initio.

While there were multiple issues before the court in the Weiss case, quite clearly one of those issues was the date when a reinstatement takes effect for purposes of a reinstated life insurance policy.    Because the policyholder had submitted the reinstatement application to the insurance company on November 10, 1937, the court's conclusion that the insurer could rescind the policy as of November 10, 1937 is a clear recognition by New Jersey's highest court that reinstatement takes   place upon submission of the application for reinstatement to the insurer.

## C. The American General Reinstatement Provision

The American General policy by its express terms provides for reinstatement should there be a lapse due to failure to timely pay premium.  It provides as follows:

> REINSTATEMENT
> If this policy lapses, it may be reinstated within five (5) years after the date of default.  We will require the insured to submit evidence of insurability which is satisfactory to us.
>
> Reinstatement will also be subject to payment of the premium for the grace period with interest at the rate of 6% per year compounded annually plus the premium due for the current policy month

As can be seen, the reinstatement provision provides that if the policy lapses, it "may be reinstated."   The use of the word "may" in the provision creates something of an ambiguity.  Because the provision requires the insured to submit evidence of insurability which is satisfactory to American General, if the evidence is unsatisfactory, American General is not required to reinstate the policy.  However, if the evidence of insurability is

satisfactory, then the provision that speaks in terms of "may be reinstated" suggests that reinstatement is mandatory if the policyholder otherwise complies with the reinstatement requirements.  If these conditions are satisfied, then the policy will be reinstated, the insurer having no discretion as to whether to reinstate.

Clearly the reinstatement provision in the policy is an offer to reinstate by the insurer that can be accepted by the policyholder.  However, the reinstatement provision does not provide as to when reinstatement will occur.  It simply states that the policy "may be reinstated within five (5) years after the date of default."  Therefore, because American General drafted the provision, under New Jersey law the policyholder is entitled to have the ambiguity construed in his favor.  Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165 (1992).

The policy does not define when reinstatement will be effective.  Plaintiff suggests that a reasonable construction is that it is reinstated at the point in time when the insured submits the application for reinstatement.  The insurance company's position that the policy is reinstated after it passes upon insurability and the check for the overdue premium clears is **not supported** by the policy language.  The insurance company's view of reinstatement is a tortured construction of its own policy, which render the policy provisions governing reinstatement as ambiguous, at best.

Since indisputably the reinstatement provision qualifies as an offer to reinstate, the point in time when acceptance occurs, i.e. acceptance by the insured, determines when the reinstatement will be effective.  Plaintiff contends that the policy was reinstated at the point in time when Jorge submitted his reinstatement application to American General.  Because the policy by its terms offered reinstatement, and because acceptance

is therefore controlled by the insured, not the insurance company, the date of submission of the application for reinstatement is the only point in time when acceptance is exclusively in the control of the policyholder. The policyholder cannot control when the insurance company will pass on his insurability and he cannot control when his check will clear his account. But, he can control when he applies for reinstatement and informs the company of his health.

Therefore, whether the policy is found to be ambiguous because it does not expressly state as to when acceptance occurs, or whether the logical point in time is that acceptance occurs upon submission of the reinstatement application, clear acceptance can only occur when the policyholder is in control of acceptance. Because it is the **insured's right of acceptance**, in response to the insurance company's offer of reinstatement, acceptance must occur upon the insured's act, and not upon the act of the insurance company (approving insurability) or some third party (bank's clearance of a check).

Acceptance by the policyholder of the insurance company's offer of reinstatement constitutes formation of a contract. It is the formation of the contract that determines the transfer of the risk of death from the policyholder to the insurance company. Thus, acceptance by the policyholder of the offer of reinstatement determines the point in time when the contract is formed.

Since American General wrote the policy and extended the offer of reinstatement in the fashion in which the policy was written, plaintiff's position is that the offer to reinstate was accepted by the plaintiff's decedent, Jorge Mendez, upon submission of the written application for reinstatement. This occurred on April 26, 2007 and therefore, the policy was reinstated at that point in time. Following submission of the Reinstatement

Application, plaintiff paid the premium due and American General passed upon the insurability of Jorge Mendez and found it to be acceptable.   Contrary to the position advanced by American General, as will be discussed below, once the premium is paid and the insurability is found to be satisfactory, the reinstatement relates back to the date of initial submission of the written application.

Thus, even if one accepts American General's position, which this Court should not, that reinstatement occurred when Jorge's check cleared on May 24, 2007, the policy's clear terms **did not** require updating the reinstatement application after its submission.  The policy simply did not so provide.

Finally, independent of Plaintiff's position that reinstatement occurs at the time of submission of the reinstatement application, Plaintiff asserts that regardless of when reinstatement took place, April 26 or May 24, the insurability of the policyholder must be measured at the time the insured submits his responses to the American General health questionnaire.  The reinstatement provision of the policy simply speaks in terms of the requirements that the insured "submit evidence of insurability which is satisfactory to [American General]."  Jorge responded to the questionnaire truthfully and completely on April 26, 2007 and his responses satisfied American General as to his insurability. **Nowhere** in the insurance contract was there a requirement that he update the responses after submission.

## D. The New Jersey Reinstatement Statute

The statute in New Jersey governing reinstatement provisions in life insurance policies supports Plaintiff's position as to the date of reinstatement.  N.J.S.A. 17B:25-9 provides as follows:

15

> There shall be a provision that unless:
> a.   The policy has been surrendered for its cash surrender value, or
> b.   Its cash surrender value has been exhausted, or
> c.   The paid-up term insurance, if any, has expired,
>
> **the policy will be reinstated** at any time within three (3) years (or two (2) years) in the case of industrial life insurance policies) from the due date of the first premium in default **upon written application therefor**, the production of evidence of insurability satisfactory to the insurer, the payment of all premiums in arrears and the payment or reinstatement of any indebtedness to the insurer upon the policy, or with interest at a specified rate and which may be compounded as specified. [emphasis supplied].

The New Jersey Reinstatement Statute controls the reinstatement provisions in the American General policy. See Schmidt v. Smith, 155 N.J. 44 (1998) (holding that Employer Liability Policy provisions must conform to statute governing such provisions). To the extent that the reinstatement provisions are broader than the statute, then the policy controls. To the extent that the policy provisions conflict with the statute, and the statute provides broader protection, then the statute controls.

The statute here allows no discretion to the insurance company as to whether it wishes to reinstate the policy. It provides that "the policy will be reinstated." While the insurance company does have the right to review the "evidence of insurability," if such evidence is satisfactory, reinstatement of the policy is mandatory "upon written application therefor." Similarly, the insurer is entitled to receive the overdue premium, but if the overdue premium is paid, the policy **must** be reinstated.

While the statute's language is more precise than American General's reinstatement provisions, set forth above, the legal effect of both is the same. "Upon written application," i.e., submission of the reinstatement application to American General, there is acceptance by Jorge of the insurance company's offer to reinstate the policy. If the answers to the questions in the reinstatement application are true from the

insured's point of view, as they were in this case, the policy is reinstated as of the date of submission of the reinstatement application to American General.

Here, based upon the unambiguous language of the statute, Jorge's policy was reinstated when he submitted the completed reinstatement application to American General.  The statute controls, and any part of the American General policy that conflicts with the statute is void.  In addition, American General cannot vary the terms of its offer to reinstate (set forth above) so as to conflict with the statute.  The statute provides that upon the insured showing proof of insurability and paying the past due premiums, the policy must be reinstated.

In its attempt to circumvent and defy the law, American General wants to place upon Jorge a totally new requirement—namely, that Jorge was obligated to notify the insurance company because Jorge learned of his diagnosis with a brain tumor between April 29, 2007 and May 24, 2007.  However, the statute, like the insurance contract, imposed no such requirement upon Jorge.  Jorge's <u>only</u> duty was to provide subjectively truthful and factually correct information on the reinstatement application at the time of submission.  Jorge did just that, and thus the reinstatement of the policy was effective upon Jorge's submission of the application to American General.

Therefore, American General's attempt to impose a new and baseless notification requirement upon Jorge is contrary to the plain language of the statute, and consequently it is void.

## E. Consistency of New Jersey Law with that of Other Jurisdictions

While this Court must apply the law of New Jersey to the construction of the American General policy before it, and notwithstanding plaintiff's position

17

that the Weiss case is dispositive of the issue, plaintiff offers case law from other jurisdictions and the leading treatise on insurance, Appleman on Insurance, in further support of its position.

The courts of various jurisdictions have held that the submission of proof of insurability constitutes acceptance of an insurance company's offer to reinstate the policy.

The majority view is that reinstatement occurs upon acceptance by policyholder of insurer's offer of reinstatement. See Appleman on Insurance, §179.03 at 275 (2d Ed. 206) (noting that majority rule is that reinstatement occurs upon insured's acceptance of insurer's offer of reinstatement); Bruegger v. National Old Line Insurance Co., 387 F.Supp. 1177 (D. Wyo. 1975), aff'd. 529 F.2d 869 (10th Cir. 1976) (Policy is reinstated upon insured's submission of application for reinstatement); Depositors Trust Co. v. Farm Family Life Insurance Co., 445 A.2d 1014 (Me. 1982) ("Reinstatement is defined in terms of the actions of the insured, and once he has met his responsibilities the contract is reinstated as a matter of law"); Officer v. New York Life Insurance Co., 216 P.253 (Colo. 1923) (Policy reinstated upon submission of application to company and payment of past due premiums); Prudential Insurance Co. of America v. Union Trust Co., 105 N.E. 505 (Ind. App. Ct. 1914) (Upon showing proof of insurability and paying past due premiums, policy is reinstated); Republic Life Insurance Co. v. Craige, 100 P.2d 281 (Okla. 1940) (reinstatement occurs on application and showing of insurability); Wichman v. Metropolitan Life Insurance Co., 96 S.W. 695 (Mo. Ct. App. 1906) (policy is reinstated upon submission of application and proof of insurability); Bowie v. Bankers Life Co., 105 F.2d 806 (10th Cir. 1939) (So long as evidence of insurability is

satisfactory, policy must be reinstated); Kennedy v. Occidental Life Insurance Co., 117 P.2d 3 (Cal. 1941) ("Insurer has no arbitrary or discretionary right to refuse reinstatement if all the conditions therefor have been complied with"); Barfield v. Wilson, 669 S.W.2d 91 (Tenn. 1984) (Policy reinstated upon submission of application for reinstatement); Ryman v. American National Ins. Co., 488 P.2d 32 (Cal. 1971) (policy reinstated upon compliance of insured with policy's provisions on reinstatement); Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833 (Ill. 1940) (Policy is reinstated on date reinstatement application is made); Illinois Bankers Life Ass'n of Monmouth, Ill. v. Palmer, 56 P.2d 370 (Okla. 1936) (Policy reinstated upon showing of insurability).

As stated above, both the American General terms regarding reinstatement and the statute only require that an insured apply for reinstatement, submit proof of insurability, and pay past due premiums, and the policy must be reinstated by the insurance company. Jorge was in full compliance with the reinstatement requirements and his submission of the truthful and factually correct reinstatement application was an effective acceptance of American General's offer to reinstate.

In Bruegger v. National Old Line Insurance Company, 387 F.Supp. 1177 (D. Wyo. 1975), aff'd 529 F.2d 869 (10th Cir. 1976), the United States District Court for the District of Wyoming was confronted with a scenario strikingly similar to the case at bar.

In Bruegger, after the insured's life insurance policy lapsed, the insured paid the past due premiums, and completed and mailed a reinstatement application to the company. Bruegger, supra, 387 F.Supp. at 1181. While the reinstatement application was in transit, the insured was shot and killed. Id. When the beneficiary notified the company and asked for the policy proceeds, the company refused to pay claiming that the

19

reinstatement of the policy did not take effect until the company had passed on the application for reinstatement.  The company further claimed that since the insured was dead before the policy had been reinstated, the company had a right to rescission.  Id.

Upon review, the District Court rejected the company's argument.  Citing the company's terms of reinstatement and a Wyoming statute (one identical to N.J.S.A. 17B:25-9, set forth above), the Court observed:

> The relationship between the insured and the insurer being contractual, the source of the obligations and rights of the parties is the insurance policy. The policy granted the insured a right of reinstatement at any time within five years of default and 'presentation of evidence of insurability satisfactory to the Company.' As a valuable contractual right it cannot be facilely or unilaterally altered or defeated.
>
> This right has been ensured by Wyoming statutory law. It is thus clear that the insured had a right of reinstatement, provided him by contract and by law, and which he timely sought to invoke by tendering payment of all premium arrears…The payment was complete and sufficient.
> Id. at 1181-1182.

The Court further held that "the stipulations of the reinstatement application sought to vary the terms of the policy, and such variances were unilaterally imposed and were not supported by any consideration."  Id. at 1182.  Additionally, the Court invoked the ancient and still valid rule "that an offer by mail invites acceptance by mail, acceptance being effective upon mailing," and held that the insured's policy was reinstated when he placed the completed application in the mail.  Id.

The matter at bar can be easily analogized to the Bruegger case.  Here, like the insured in Bruegger, Jorge fully complied with American General's reinstatement procedures when his policy went into lapse.   Jorge truthfully answered all of the questions on American General's reinstatement application and sent the completed application to the insurance company.  The company received the overdue premiums and approved Jorge's insurability.  With both accomplished, reinstatement related back to the

date of submission of the reinstatement application.

## F. Reinstatement of the Policy Relates Back to the Date of Submission of the Reinstatement Application

Plaintiff recognizes that the insurance policy and reinstatement statute provide for payment of the overdue premium as well as the presentation of evidence of insurability satisfactory to the insurer.   Indeed, these are requirements, however, once they are met, the effective date of reinstatement relates back to the date of the written application.   In the Weiss case, the policyholder applied for reinstatement on November 10, 1937, however, the overdue premium was not submitted until November 12, 1937 (as noted in second paragraph of dissenting opinion of Justice Heher, Id. at 381).   Yet, the Court of Errors & Appeals held that the reinstatement of the policy occurred on November 10, 1937, the date when the application for reinstatement was submitted to the insurer.   Other jurisdictions have similarly so held with respect to relation back. See Muckler v. Guaranty Fund Life Assn., 208 N.W. 787, 789 (S.D. 1926); Bowie v. Bankers Life Co., 105 F.2d 806, 808 (10th Cir. 1939); Rothschild v. New York Life Insurance Co., 162 A. 463 (Pa. Super. Ct. 1932).

Therefore, while the insurer can pass upon the evidence of insurability, and can require payment of the overdue premium, if the evidence of insurability is acceptable, regardless of when the review takes place, and if the overdue premium is paid, the reinstatement occurs "upon written application therefor."

Thus, it is plaintiff's position that the "new" contract, i.e. the "reinstated" contract, was formed when Jorge Mendez submitted the Reinstatement

Application on April 26, 2007 to American General.  We know that American General found satisfactory Jorge's proof of insurability.  It informed him by letter dated May 10, 2007 that its underwriting department had approved the application (Certification of Michael Sepanski, dated March 1, 2010, Exhibit C).  In the same letter of March 10, 2007, American General informed Mendez as to the premium due to maintain the policy to August 6, 2007.

After receipt of the American General notice of May 10, 2007, Debby Mendez forwarded a check in the amount of $1,408.39 to satisfy the overdue premium and make an advance premium as requested by American General in the May 10, 2007 letter to August 6, 2007.  (Certification of Michael Sepanski, dated March 1, 2010, Exhibit C).  With American General's agreement as to the insurability of Jorge Mendez, and receipt of the premium, the policy was reinstated effective April 26, 2007, the date when the Reinstatement Application was submitted to American General.

With the American General policy in force on April 26, 2007 the risk of a change in Jorge Mendez's health transferred to American General.  The insured agreed to pay the premium, the certainty, and American General agreed to accept the risk of the uncertainty, i.e. a change in the health of Jorge.  But, since the risk transferred on April 26, 2007 by virtue of the reinstatement, there was no requirement on the part of Mendez to inform the insurer of his later confirmed diagnosis of a brain tumor.  Indeed, providing such information would have been an idle gesture – the risk of this occurrence, i.e. a change in Mendez's health, had already transferred to the insurer.

## G. The Consonance of the Majority View that Reinstatement Occurs Upon Application with the Holding of the United States Supreme Court

As expressed above, Plaintiff's position is that reinstatement of Jorge's policy, i.e. acceptance, occurred at the point in time that Jorge submitted his application for reinstatement—April 26, 2007.

Plaintiff asserts that the reinstated contract was formed upon Jorge's acceptance of American General's offer of reinstatement, and that therefore, Jorge's insurability must be measured **at the point of contract formation**. As such, Plaintiff's position is that Jorge **was not required** to inform the insurance company of his change of health, because the risk of a change in Jorge's health had passed to the insurance company on April 26, 2007.

Plaintiff's stand here is wholly consistent with that of the Supreme Court of the United States. Our country's highest court, in <u>Mutual Ben. Life Ins. Co. v. Higginbotham</u>, 95 <u>U.S.</u> 380 (1877), was confronted with an issue that is identical to the case <u>sub judice</u>. In <u>Higginbotham</u>, the insured had purchased a life insurance policy that went into lapse in July 1870, following the insured's failure to pay premiums according to the contract. <u>Id.</u> at 381. On October 1, 1870, the insured furnished to the insurance company's agent the overdue premium and evidence of continued insurability, including a certificate signed by the insured's physician, attesting to the good health of the insured. <u>Id.</u> After the reinstatement papers were received by the company, the policy was renewed, and the insurance company sent to the insured a renewal receipt, which was received by the insured on October 14, 1870. <u>Id.</u>

In January 1871, the insured died of consumption, and a claim was made to the

insurance company for the benefits.   Id. at 383.   To justify its refusal to pay the beneficiary, the insurance company, like American General here, claimed that the insured was diagnosed and was aware of his change in health between October 1 (the date the reinstatement procedures were complied with) and October 14 (the date the insured received the insurance company's receipt evidencing reinstatement).   Id.   The insurance company claimed that the insured was under a "continuing" burden, from October 1 to October 14, to inform the company of a change in his health.   Id.   Therefore, the recalcitrant insurer claimed that it did not have to pay the policy's proceeds to the beneficiary.

The United States Supreme Court expressly and emphatically rejected the insurance company's assertions.   In putting to rest the insurer's theory of a "continuing" burden, the Supreme Court stated:

> [N]o inquiry was made of [the insured] or demand for information as to his condition between the 1st and the 14th of October. The company was particular and specific in its inquiries as to his condition on the 1st of the month, and required prescribed forms of evidence as to that condition. ***There it stopped, and neither by expression nor by implication intimated a desire for later information***. (emphasis supplied).
> Id. at 383-384.

In the above-quoted passage, the Supreme Court correctly noted that the insurance company had the opportunity to be "particular and specific in its inquiries" of the insured regarding reinstatement.   The fact that the insurance company only made such inquiries as it did should not be held against the insured, who faithfully complied with the company's reinstatement procedures.

Indeed, later in its opinion, the Supreme Court crystallized its holding on the duties of the insured during the reinstatement process:

> There is every indication that [the insured] thus relied upon that contract, nor is

> there any reason to believe that he intended to deceive or to conceal. The
> company made inquiries to its own satisfaction, so far, in such direction, upon
> such points, and within such periods, as it thought proper. ***It was not for him to
> advise the company of what it should do, or to volunteer information which it
> did not seek***. (emphasis supplied).
> Id. 385.

Thus, the Supreme Court unequivocally held that there was no "continuing" duty on the

part of the insured to notify the company of a change in health after submission of the

reinstatement application.   The Court held that on October 1 the insured's compliance

with the company's reinstatement procedures was honest and truthful.   The insured

complied with the procedures set forth by the company. He did not do less, and he could

not reasonably have been expected to do more. The Court rightly noted that the insured

was not bound to give the company information that was not asked for; information, the

nature of which, could not possibly be known by the insured.   Honesty and good faith,

not clairvoyance or prognostication, are all that is required at the time of submission of

the reinstatement application.

The case before this Court could not be more similar to the case discussed above.

Like the insurance company in Higginbotham, American General is asserting the

existence of a "continuing" obligation on the part of Jorge.   That is, American General

insists that Jorge was duty bound to inform the insurance company of the change in

health **after** April 26, 2007, the date on which Jorge submitted his reinstatement

application. He was not.  Neither the policy provisions nor the New Jersey Reinstatement

Statute impose such an obligation on him.  They measure his insurability at the point in

time when he completes and submits his reinstatement application to the insurer.

## H. American General's Method of Doing Business

American General would suggest that the equities require that a policyholder

inform an insurance company of a change in health between the time he applied for reinstatement and the time the insurance company passes on his insurability. This would include an obligation to inform it, during the review period, of the ultimate change in health—death. But, every insurance company knows that there is a risk of death, or change in health, of a policyholder **at any point in time**. This is as true for American General as it is true of any insurer. Utilizing actuarial tables, the insurer calculates the risk of death and the premium required to be charged to compensate the insurer for undertaking that risk.

Just as an insurer can calculate actuarially the risk of death during the policy period, it can similarly calculate the risk of death, or a change in health, during the review process upon a reinstatement application. The possibility of a change in health, even death, between the time an insured submits a reinstatement application to an insurer and the time the insurer's underwriters pass upon his insurability, is obvious and well known to insurers. The only way this could occur simultaneously would be for the insured to complete the reinstatement application in the presence of the underwriters. That would be a completely impractical way of operating. Thus, the insurer has to make a judgment as to its method of operation for reinstatement that accounts for the potential of a change in health during the period from submission of the reinstatement application to the point of approval after reinstatement. Further, since this involves a risk, the insurer has to determine how to obtain a premium to compensate it for underwriting the risk.

There will be a delay, and a concomitant increase in risk if reinstatement occurs on the date of the submission of the reinstatement application. However, the insurance company can actuarially calculate this increase in risk and can charge a premium on all

its policies to cover the risk.

In this case, American General developed its method of operation for reinstatement of its life insurance policies by having the policyholder complete a reinstatement application and submit it to its underwriters for review. American General drafted its policy terms with the knowledge of the statutes governing them and the case law construing those terms.

The insurance company determined to utilize a process that called for an application for reinstatement to be submitted to it for review by its underwriters. By its very nature, the process recognized a gap in time and the potential for change in health after submission of the reinstatement application. This was a risk that American General assumed when it chose to do business in this fashion. Recognizing this risk, American General was in the position to protect itself, and undoubtedly did, by charging a premium for its acceptance, i.e. acceptance of the risk of a change in health during the review period. Now, American General argues that it should have it both ways—retain the premium for the risk of a change in health, and simultaneously refuse to extend the coverage built into the premium for this risk.

Thus, contrary to the implications of American General, the equities are in favor of the policyholder here, and not in the favor of the insurance company. The premium itself reflects the transfer of the risk of a change in health and the policyholder is entitled to the coverage he paid for in his premium.

Plaintiff offers additional reasons to support her position that the insurer's method of operation recognizes that the risk of a change in health transferred to the insurer after submission of Jorge's application for reinstatement. She suggests that the reinstatement

process was developed intentionally, for ease of reinstatement. Plaintiff submits that there are several easily understood reasons for this "streamlined" process.

Insurance companies earn money from insurance that is in effect and for which they are collecting premiums. No profit comes from a policy in lapse. Since the insurance company has already incurred the cost of a physical examination of the insured and reviewed his medical records to its satisfaction, there is no need to go through the whole process again. Further, the agent's commission is primarily paid from the first year's premium. Thus, when all of these expenses have already been incurred and paid by the insurer and the risk is found to be acceptable, it is in the insurer's interest to "streamline" the process if there is a default in the premium payments and reinstate the policy upon a single application and health questionnaire.

It is true that the insurer could provide for an exhaustive reinstatement process, but then the company would risk an insured choosing to forego that process and leave the policy in lapse and perhaps never have it reinstated. On the other hand, the insurer could provide for ease of reinstatement, e.g., having the insured simply respond to a health questionnaire and provide for immediate reinstatement. An easier process means that the insurer must accept the risk of a change in the health of the insured after the submission of the reinstatement application. But it also means that more policies will be reinstated. The insurer accounts for this risk simply by actuarially building it into the premium.

## **POINT II**

NO ISSUE OF FACT EXISTS THAT WOULD JUSTIFY ALLOWING AMERICAN GENERAL TO DENY ITS OBLIGATION TO PAY THE PLAINTIFF THE POLICY'S PROCEEDS.

Summary judgment is proper when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 268 (3d Cir. 2008); F.R.C.P. 56(c).

In ruling on a motion for summary judgment, the district court must view the facts in the light most favorable to the non-moving party.  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, "the mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### CONCLUSION

In this case, there is no issue that Jorge fully complied with the reinstatement procedures set forth in American General's life insurance contract.  Upon lapse, Jorge filled out a reinstatement application and answered each question truthfully.  American General cannot point to any false statement or assertion made by Jorge in the reinstatement application.  There is also no dispute that American General had the opportunity to evaluate Jorge's evidence of insurability, and did so.  Being satisfied that Jorge was insurable, American General properly reinstated the policy.

Now American General seeks to rescind the reinstated policy.  While conceding that his responses were complete and truthful at the time the reinstatement application was submitted, it now asserts that Jorge was constrained to disclose his diagnosis with a brain tumor.  As set forth above, no such requirement was ever upon Jorge.  Under the terms of the policy, the policy was reinstated upon Jorge's submission of his application.  Neither the terms of the reinstatement provisions of the life insurance policy, nor the

terms of the governing statute, require anything but an honest compliance with the terms of reinstatement. Jorge did just that. American General now must uphold its end of the agreement. The policy was properly reinstated. Therefore, American General must pay the full proceeds to the plaintiff.

Thus, for the foregoing reasons Plaintiff Debby Mendez respectfully requests that the Court issue an Order that Defendant American General pay the $1.2 million proceeds, plus interest, to Plaintiff.

Respectfully submitted,

Garrity, Graham, Murphy, Garafalo & Flinn

By: _____
           Naveen M. Nadipuram, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

Date: May 19, 2010