GARRITY, GRAHAM, MURPHY, GAROFALO & FLINN
A Professional Corporation
72 Eagle Rock Avenue, Suite 350
P.O. Box 438
East Hanover, New Jersey 07936
973-509-7500
Attorneys for Plaintiff Debby Mendez
990.22450FXG

| | |
|---|---|
| DEBBY MENDEZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br>AMERICAN GENERAL LIFE<br>INSURANCE COMPANY,<br><br>　　　　　Defendant. | **UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION No.  09-cv-01155 (WJM) |

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF DEBBY MENDEZ'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Francis X. Garrity, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................... ii

    I.      Introduction.............................................................1

    II.     The Broad Position of American General...........................1

    III.    Plaintiff's Response to American General's Position.............4

    IV.    Case Law Cited by American General..............................7

    V.     The "Acknowledgement" Provision in the
            Reinstatement Application is Contrary to
            the Policy Terms and the Reinstatement Statute...................11

    VI.    American General's Contention that the Policyholder
            Was Required to Advise it of a Change in Health.................13

    VII.   American General's Position that Reinstatement
            Occurs Once the Mendez Check Clears............................19

    VIII.  American General's Position that
            Reinstatement Does Not Take Place Until
            the Application is Reviewed by its Underwriters...................21

    IX.    Plaintiff's Response to American General's Discussion
            of the *Higginbotham* Case...........................................23

    X.     American General's Use of Prior Drafts
            of Plaintiff's Brief..................................................24

    XI.    Responses to Certain Claims Made by American General..........25

CONCLUSION...................................................................28

## TABLE OF AUTHORITIES

**Statutes**
N.J.S.A. 17B:25-9


**Cases**

Bowie v. Bankers Life Co., 105 F.2d 806 (10th Cir. 1939)

Boylan v. Jackson Nat'l Life Ins. Co., 2008 U.S. Dist. LEXIS 75809, aff'd 2009 U.S.

App. LEXIS 25783 (3rd Cir. Nov. 19, 2009)

Bruegger v. National Old Line Insurance Company, 387 F.Supp. 1177 (D. Wyo. 1975),

aff'd 529 F.2d 869 (10th Cir. 1976)

Bruni v. Prudential Life Ins. Co. of America, 51 N.J. 408 (1968)

Depositors Trust Company v. Farm Family Life Insurance Company, 445 A.2d 1014,
1020 (Maine 1982)

Friedman v. Tappan Development Corp., 22 N.J. 523 (1953)

Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833 (Ill. 1940)

Glezerman v. Columbia Mutual Life Ins. Co., 944 F.2d 146 (3rd Cir. 1991)

Hogue v. Supreme Liberty Life Ins. Co., 18 N.E.2d 503 (Ohio Ct. App. 1937)

Johnson & Johnson v. Charley Drug Co., 11 N.J. 526 (1953)

Muckler v. Guarantee Fund Life Ass'n, 208 N.W. 787 (S.D. 1926)

New York Life Ins. Co. v. Weiss, 32 A.2d 341 (N.J. E.&A. 1943)

Odatalla v. Odatalla, 355 N.J. Super. 305 (Ch. Div. 2002)

Rothschild v. New York Life Ins. Co., 162 A. 463 (Pa. 1932)

Russo v. Guardian Life Insurance Co., U.S. Dist. 1997 LEXIS 24318 (D.N.J. 1997) aff'd

159 F.3d 1353 (3rd Cir. 1998)

Stipcich v. Met. Life Ins. Co., 277 U.S. 311 (1928)

<u>U.S. v. Parkside Court, Inc.</u>, 257 <u>F.Supp.</u> 177 (D.N.J. 1966)

<u>Weir v. City Title Ins. Co.</u>, 125 <u>N.J. Super.</u> 23 (App. Div. 1973)

# I.
## INTRODUCTION

There are presently pending before the Court Motions for Summary Judgment filed on behalf of the plaintiff, Debby Mendez, and the defendant, American General Life Insurance Company, in the within matter.   In this Reply Brief, Debby Mendez will respond to each of the arguments presented by American General that it relies upon to support its position denying insurance benefits to the Plaintiff, as beneficiary on the life insurance policy of her deceased husband, Jorge Mendez.

Plaintiff asserts that this case is controlled by New Jersey law and that the highest court of New Jersey has addressed the exact issue in this case.  The issue is when did the reinstatement of the American General policy occur, i.e. when was the formation of the contract between Plaintiff's decedent and American General?   In New York Life Insurance Co. v. Weiss, 32 A.2d 341 (N.J. E.&A. 1943) the Court of Errors and Appeals of New Jersey held that upon a reinstatement application the contract is formed upon submission of the application to the insurance company.  Here, as will be addressed more fully below, Jorge Mendez submitted the Reinstatement Application on April 26, 2007.

Therefore, any change in his health, whether it be death or diagnosis of a brain tumor, the risk had passed to American General relieving Mendez of any obligation to inform American General of the diagnosis.

# II.

## THE BROAD POSITION OF AMERICAN GENERAL

American General issued a life insurance policy on the life of Jorge Mendez that took effect on December 6, 2006.   When Jorge Mendez failed to remit a premium

payment due on March 6, 2007, and the 31-day grace period had expired under the policy, American General notified Jorge that the policy had lapsed, i.e., the insurance benefit was suspended. Under the terms of the life insurance policy, Jorge Mendez had the right to seek reinstatement of the policy and restore the insurance benefit. On April 20, 2007, Jorge Mendez completed a Reinstatement Application, mailed it to his agent, Jeffrey Greenberg, and on April 26, 2007 the office of Mr. Greenberg submitted via facsimile the Reinstatement Application to American General.

At the time the Reinstatement Application was submitted to American General, the overdue insurance premium was not forwarded with it. Rather, by letter dated March 10, 2007 American General notified Jorge that while the underwriting department had approved his application, they could not complete the process until he remitted "$1,408.39 which will pay premium to August 6, 2007." (Certification of Michael Sepanski dated March 1, 2010, Exhibit C). After receipt of American General's letter of May 10, 2007, Debby Mendez forwarded a check in the amount of $1,408.39 on May 14, 2007 to American General. (Certification of Michael Sepanski, dated March 1, 2010, Exhibit C). According to American General, the funds represented by the Mendez check cleared on May 24, 2007.

It is thus the position of American General that the reinstatement of the Mendez life insurance policy did not take place until May 24, 2007. Its position is that once the Reinstatement Application was submitted, once proof of insurability was passed upon by American General and approved, and once the premium payment cleared the Mendez account, the reinstatement took place. For example, had Jorge been struck by a bus and killed on May 23, 2007, no insurance would be in effect. The American General position

2

is that the risk of death, or a change in health affecting insurability (death being a change in health) did not transfer to it until what the insurance company contends was the last act necessary to effect reinstatement occurred, i.e. clearance of the Mendez check on May 24, 2007.

From the position that the reinstatement did not occur until May 24, 2007, American General makes the leap that Mendez was obligated to keep it informed fully as to his health up until that point in time. The American General position is that an application for reinstatement must be treated in the same fashion as an initial application for insurance. Because no contract is in existence during the initial application process for life insurance, the law imposes a continuing obligation on the applicant to inform the insurance company of any change in health up until the point in time when the insurance company makes its offer to insure. The reason the law imposes this obligation is that there is no contract in effect and the insurance company is relying upon the representations made by the applicant in devising the form of its offer, i.e., how much and whether it will insure and how much the premium will be.

In contrast, reinstatement by the insurer of a life insurance policy is mandatory and occurs at the point in time the insured "accepts" the insurer's "offer" of reinstatement. If acceptance occurs upon submission of the reinstatement application, the policy is reinstated and there is no obligation to inform the insurer of a change in health as the risk of such change transferred upon reinstatement.

The American General position is that while Jorge Mendez responded to the questions on the Reinstatement Application concerning his health truthfully at the time of submission on April 26, 2007, he was required to inform the insurer of the change in his

health when he was informed that an MRI showed a mass in his brain and consulting physicians advised that it may be a brain tumor. Further, when the mass was partially removed by an operation on May 17, 2007 and Mendez was informed that it was in fact a brain tumor, American General contends that he was required to amend his responses previously submitted in answer to the questions on the Reinstatement Application.

Again, the insurer's position is that right up until May 24, 2007 when the Mendez check cleared, he was obligated to keep American General informed as to any change in his health since submission of the Reinstatement Application to it on April 26, 2007. Failure to so inform the insurance company of a change in health affecting insurability, according to American General, voids the policy.

We refer to the outline above as American General's "broad" position with respect to the issues of coverage. Indeed, there are details in its position, specific allegations, references to case law, but at the core of its position is a contention that Mendez had a continuing obligation to inform the insurance company of any change in his health from the time of submission of the Reinstatement Application right up until the date his check cleared. Let us consider this position.

## III.

### PLAINTIFF'S RESPONSE TO AMERICAN GENERAL'S POSITION

American General's position here is that the policy was reinstated on May 24, 2007, and the risk of a change in Jorge Mendez's health or his death did not shift to the insurance company until that date. If this position be true, American General must establish when the new contract (the reinstatement) became

4

effective.  As a contract, reinstatement can only come into being after an offer is made and an acceptance occurs.  What were the offer and acceptance to make the contract effective on May 24, 2007?  What happened on May 24, 2007, such that this Court could conclude that a contract was created on that day?

On May 24, 2007, the Mendez check cleared the account and American General asserts that at this point in time the policy was reinstated. But, since the insurer approved the evidence of insurability, the question arises:  Could the insurer have chosen not to reinstate the contract?  Of course the answer to this question is "no" because the insurance contract by its terms and the Reinstatement Statute governing the policy terms, expressly provide that the insurer is required to reinstate the contract.  No discretion is permitted to the insurer.  The insurer must reinstate.

That being so, the contract could not have been formed on May 24, 2007 because a contract is a **"voluntary obligation proceeding from a common intention arising from an offer and acceptance."**  Johnson & Johnson v. Charley Drug Co., 11 N.J. 526, 539 (1953) (emphasis supplied); Friedman v. Tappan Development Corp., 22 N.J. 523 (1956); U.S. v. Parkside Court, Inc., 257 F.Supp. 177 (D.N.J. 1966); Odatalla v. Odatalla, 355 N.J. Super. 305 (Ch. Div. 2002).

Since it is undisputed that a contract was formed, it must be determined when American General and the plaintiff's decedent voluntarily entered into the contract.  Plaintiff's position is that the initial act occurred when American General first offered to insure Jorge Mendez.  It was at this point in time that

American General had reviewed Jorge's application for life insurance, determined to underwrite the risk, established the terms, i.e. insurance benefits, premium, lapse and reinstatement, etc., and extended the offer. This was the voluntary act on the part of the insurer. The offer of the insurer included a provision in the insurance contract providing that if the policy went into lapse, the policyholder could accept an ongoing offer of reinstatement from the insurer for up to five (5) years. This offer of reinstatement was a provision of the policy offered to Jorge Mendez.

It is without question that the Mendez policy went into lapse, and further undisputed that the policy, and the statute, provide that the insurance policy will be reinstated upon written application, production of evidence of insurability and payment of overdue premium. If a reinstated policy is a new contract, and admittedly it is, then the voluntary act of American General is its offer to reinstate as provided for in the original insurance contract. The voluntary act of the insured is the acceptance of the offer to reinstate by submission of the Reinstatement Application providing evidence of proof of insurability, and payment of the overdue premium.

Thus, the "new" contract is formed at the point in time the insured accepts the American General offer of reinstatement. Upon Jorge Mendez's acceptance, the risk of a change in Jorge's health transferred to American General. As indicated in Plaintiff's initial brief, death is nothing more than a change in health, albeit the "ultimate" change in health. Importantly, death bears upon insurability just as diagnosis of a brain tumor bears upon insurability. While Jorge Mendez

6

was not struck by a bus and killed between April 26 and May 24, 2007, he was diagnosed with a brain tumor.  Whether Jorge died during this period, or was diagnosed with a brain tumor must be treated in the same fashion.  Because at the time he completed the Reinstatement Application and submitted it to American General, and because he had no knowledge of the existence of the brain tumor at the time of submission, the measure to determine insurability is the date he submitted the Reinstatement Application.  The same would be true if he died.

Because he had no knowledge of the tumor at that time, the risk of a change in health transferred to the insurance company.  Because his diagnosis of a brain tumor occurred after submission of the Reinstatement Application, i.e. after the new contract was formed reinstating the original terms of the life insurance policy, his failure to disclose the diagnosis, or even his disclosure if he had chosen to disclose, was totally irrelevant to the formation of the contract.  The new contract had already been formed and was extant on April 26, 2007.

# IV.

## CASE LAW CITED BY AMERICAN GENERAL

American General points to the decision of the Third Circuit Court of Appeals in Glezerman v. Columbia Mutual Life Insurance Co., 944 F.2d 146 (3rd Cir. 1991) and claims that this case supports its assertion that the policy was not reinstated until May 24, 2007.  However, Glezerman did not involve the effective date for a reinstated contract.  No such issue was before the court.  There were two issues involving the insurer before the court in Glezerman.  The first was

whether or not the insurance company had waived its right to pass upon the policyholder's insurability for purposes of reinstatement by its alleged delay.

The Third Circuit held that an insurer is given a "reasonable amount of time in which to demand proof of insurability from the policyholder and then decide to reinstate." Id. at 153. The Court determined that the insurer had passed upon the issue of insurability in just over 60 days, and because there was no evidence of dilatory or lackadaisical conduct, the court held that the insurer had acted within a reasonable period of time. Id. Importantly, the Court's decision in this regard related to how much time an insurer had to pass on insurability. It did **not** determine the effective date of a reinstatement.

The second issue decided by the Court was whether the insurer could utilize its standard underwriting criteria in passing upon insurability. The Court held that the insurer could, citing New Jersey precedents. Again, the issue of the effective date of a reinstatement was not before the Court.

American General points to the unpublished decision of the United States District Court in Russo v. Guardian Life Insurance Co., U.S. Dist. 1997 LEXIS 24318 (D.N.J. 1997), aff'd 159 F.3d 1353 (3rd Cir. 1998).[1] This case represents a misperception of the scope of the Third Circuit's decision in Glezerman. The issue of the effective date for a reinstatement was clearly before the Court in Russo. The policyholder argued that the reinstatement occurred on the date the written application was submitted to the insurer, and since the policyholder died

---

[1] It should be noted that the Third Circuit's one word opinion affirming the District Court's unreported opinion in Russo has **no precedential value, and is not binding** upon this Court. See U.S. Court of Appeals, Third Circuit Internal Operating Rule 5.3.

two days later, plaintiff's contention was that the policy was reinstated on the date the written application was submitted to the insurer.

The District Court rejected the policyholder's position relying exclusively upon the decision of the Third Circuit in <u>Glezerman</u>. In fact, the Court noted its belief that it was bound by the decision of the Third Circuit in <u>Glezerman</u>. The Court quoted from the decision concerning the fact that an insurer is given a reasonable period of time to pass upon proof of insurability before deciding to reinstate. The District Court believed that this phrasing required it to conclude that reinstatement occurs **after** the insurer passes upon insurability. Since the policyholder had died by the time the insurer passed upon his insurability, the court concluded that the insurance could not be in effect.

Again, the decision of the Court in <u>Russo</u> rested upon a misperception of the holding in <u>Glezerman</u>. The Third Circuit there did <u>**not**</u> determine the effective date for reinstatement. The issue was not before the Court. In the face of the policyholder's argument that the insurer had waived its right to pass upon insurability due to its asserted delay, the Third Circuit only held that an insurance company was given a reasonable period of time to pass upon insurability to determine whether to reinstate. Importantly, the Court, in its ruling, was not addressing when a reinstatement is effective. As indicated, case law supports the proposition that reinstatement is effective on the date of the application if insurability is established and overdue premiums are paid. The effective date of reinstatement relates back to the date of the application.

9

American General also relies upon the unreported decision in <u>Boylan v.</u> <u>Jackson National Life Insurance Co.</u>, 2008 U.S. Dist. LEXIS 75809 (D.N.J. 2008), aff'd. 2009 U.S. App. LEXIS 25783 (3rd Cir. November 19, 2009). The <u>Boylan</u> case involved a total failure on the part of the insured to offer any evidence of insurability, so as to secure a reinstatement of a life insurance policy. The case focused upon the insurance company's receipt of an overdue premium and the handling of that premium by the company. The insured claimed that the company waived the requirements of reinstatement of the policy by holding the insured's premium payment for thirty (30) days before returning it to the insured. Both the District Court and the Third Circuit held that the company had not waived its requirements for reinstatement. Significantly, the holdings in the case in no way address the issue of the timing of reinstatement.

American General also relies upon the cases of <u>Stipcich v. Metropolitan</u> <u>Life Insurance Co.</u>, 277 <u>U.S.</u> 311 (1928) and <u>Weir v. City Title Insurance Co.</u>, 125 <u>N.J. Super.</u> 23 (App. Div. 1973). Both of these cases involved **initial** applications for insurance where there was a change of conditions material to the risk prior to formation of a contract of insurance. These cases, and the principles upon which they rely, have no applicability here as we are not dealing with an initial application for insurance. Here, the parties are dealing with an offer of reinstatement that is a material provision in the insurance policy that permits acceptance by the policyholder upon written application for reinstatement.

# V.

## THE "ACKNOWLEDGEMENT" PROVISION IN THE REINSTATEMENT APPLICATION IS CONTRARY TO THE POLICY TERMS AND THE REINSTATEMENT STATUTE.

The American General Reinstatement Application contained language which will be referred to here as an "acknowledgment." Specifically, above the signature line the following language appears:

> I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the company, unless or until: the policy has been delivered and accepted; the first full modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

American General points to this language to support its position that Jorge Mendez was required to inform it of a change in his health. There are several problems with this position.

First, the "acknowledgment" language is in conflict with the insurance policy itself. The policy does not so provide. As such, the acknowledgment, being in conflict with the policy provision, is void. Bruni v. Prudential Life Insurance Co. of America, 51 N.J. 408 (1968) (life insurance contract constitutes entire contract between parties and cannot be modified without consideration); see also Depositors Trust Co. v. Farm Family Life Insurance Co., 445 A.2d 1014 (Me. 1982) (modifications to policy without consideration are void); Bruegger v. National Old Line Insurance Co., 387 F.Supp. 1177 (D.Wyo. 1975) aff'd. 529 F.2d 869 (10th Cir. 1976) (policy is the entire contract between parties and provision of application for reinstatement that conflict with policy is void);

Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833, 834 (Ill. 1940) (purported modification of policy in reinstatement application, because not part of original policy, is void); Hogue v. Supreme Liberty Life Ins. Co., 18 N.E.2d 503 (Ohio Ct. App. 7th Dist. 1937) (insurance company cannot incorporate new provisions into reinstatement application, absent consideration therefor); Rothschild v. New York Life Ins. Co., 162 A. 463, 466 (Pa. 1932) (insurance company cannot modify policy via application for reinstatement).

The second problem with the reliance by American General on the "acknowledgment" language is that the language is in conflict with the New Jersey Reinstatement Statute, N.J.S.A. 17B:25-9, governing the provisions relating to reinstatement in a life insurance policy. There is nothing in the Reinstatement Statute that would permit an insurance company to include phrasing in a reinstatement application that conflicts with the underlying policy provision relating to reinstatement.

Third, the language utilized by American General in the acknowledgment is beyond ambiguous. The phrasing speaks in terms of delivery of a policy and payment of the first "modal" premium for the issued policy. But, the application was for a reinstatement. From the perspective of the insured, there was no new policy being issued and he would have no idea what a "first full modal premium" was. Most assuredly, if he had no expectation that he was receiving a policy or had to pay the first "full modal premium," he certainly would have no understanding that if there was a change in his health, he was required to inform the insurer. Stated simply, the provision in the application conflicts with the policy and the statute and is so ambiguous in the context of an application for reinstatement, it is rendered unintelligible.

Finally, the phrasing in the "acknowledgement" is nonsensical in the context of a reinstatement application.  It states: "[T]here has been no change in the health of any proposed insured that would change the answers to any questions in the application." The phrasing speaks of a "change in the health" that would "change the answers to any questions."  But, the applicant is responding to the questions at the time he completes the application.  How could there be a change in health during the process of answering the questions?  Is the phrasing suggesting that, if there is a time delay between answering the questions and executing the acknowledgement, that the answers must be amended?

It would appear that this phrasing relates to new applications for insurance and is intended to address the time delay in the period between submission of the application and the insurer's offer to insure.  That is the only context in which the phrasing of the acknowledgment would make any sense.   In the context of an application for reinstatement, where the application constitutes acceptance, the phrasing **makes no sense**.

# VI.

## AMERICAN GENERAL'S CONTENTION THAT THE POLICYHOLDER WAS REQUIRED TO ADVISE IT OF A CHANGE IN HEALTH.

As indicated above, in the case of an initial application for life insurance, there is no contract in force and the process involves the submission of information to the insurance company for its evaluation in determining whether or not to insure the applicant and if so, for how much, and at what premium charge.  Unlike the initial application for insurance, a Reinstatement Application is governed by the terms of the life insurance policy and the reinstatement statute in New Jersey.

Here, American General had issued an insurance policy to Jorge Mendez that had taken effect on December 6, 2006. The contract was express in terms of identifying the insurance benefit, the premium that would be charged for each of 29 years, and various provisions of the policy rendering benefits to the insured. Among the "benefits" that formed part of the policy was a provision for reinstatement. The provision is a material term of the policy and outlines the measures to be taken by the insured to effect reinstatement. Upon compliance with the requirements, the insurer cannot reject reinstatement. Reinstatement of the policy is mandatory. The provision speaks in terms of the insured submitting "evidence of insurability which is satisfactory to us." Thus, the potential exists for the insurance company upon review of the application to reject it on the basis that the policyholder is no longer insurable. The policy does not define the requirements in terms of "insurability." For example, it does not provide that the insured must undergo a physical, nor does it provide that the insured must provide up-to-date medical records. Rather, it simply speaks in terms of "evidence of insurability" leaving to the insurer what it would require such as to be "satisfactory" to it.

Here, the Reinstatement Application of American General was a simple questionnaire inquiring as to the health of Jorge at the time of completion. The Application only required that he respond to the questions. Jorge did, and submitted it to the agent for transmittal to American General.

The American General position is that Jorge was required to keep the insurer informed as to his health by amending the previously submitted Reinstatement Application up until the date his check cleared on May 24, 2007. But, nowhere in the Reinstatement provision of the policy does it say that. There is one sentence dealing with

14

this issue and one sentence alone.  The policy states: "We will require the insured to submit evidence of insurability which is satisfactory to us."  Jorge submitted "evidence of insurability" based upon his knowledge of his health condition as of April 20, 2007 that was transmitted to American General on April 26, 2007.

At the time of transmittal, and at the time Jorge answered the questions in the application, undisputedly he had no knowledge that he would be diagnosed with a mass within nine (9) days and ultimately confirmed to have a brain tumor within the next twenty-seven (27) days.  Importantly, the insurance contract spells out what is required of the insured to obtain reinstatement should there be a lapse in coverage.  It simply states that the insured must submit "evidence of insurability which is satisfactory to us."  Jorge Mendez submitted that evidence and American General approved his application following review by its underwriting department.  Nowhere in the policy does it state that after the insured responds by completion of a written application to establish proof of insurability that he must update his responses to that questionnaire.

The Supreme Court of Illinois, in a case virtually identical to the case at bar, analyzed the issue of reinstatement in the context of a brain tumor diagnosis.  In Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833 (Ill. 1940), the insured's life insurance policy went into lapse because of his failure to pay premiums.  Id. at 834.  On May 4, 1933, the insured made his application for reinstatement, which was received by the company on May 6, 1933.  Id.  The Court specifically noted that "[a]ll the questions [on the reinstatement application] were answered in an obviously favorable manner, **but neither then, nor at any later time, did the company demand or request any medical examination nor any other proof of insurability**."  Id. (emphasis supplied).

15

After suffering from headaches, the insured visited a physician between May 12 and May 15. Id. at 835. On May 17, the insured was diagnosed with a brain tumor, and died on May 19, after undergoing an operation. Id. When the insured's beneficiary applied for the policy's proceeds, the company balked, claiming that the policy was never reinstated because an agent of the company had heard, on May 19, that the insured was in the hospital for treatment for a brain tumor. Id. Like American General here, the company refused to pay, and made the claim that the insured knew of his condition on May 4 when he applied for reinstatement, and failed to notify the company.

The Illinois Supreme Court, after a thorough review of the record, concluded that the insured was in good health on May 4, and that the policy had been effectively reinstated. Id. at 836. The Court held that the date from which the insured's insurability must be measured is the date he applied for reinstatement—May 4. The Court, citing the United States Supreme Court's decision in Mutual Ben. Life Ins. Co. v. Higginbotham, 95 U.S. 380 (1877), also held that the "truth or falsity of the statements are to be determined as of the date the certificate [application for reinstatement] is made." Id. Because the insured was in good health on May 4, the date of the reinstatement application, the company was liable.

Specifically with regard to the insured's duty to inform the company, the Court cogently stated:

> The record shows without dispute that the insured had furnished **all the evidence he had been asked to furnish** and that that evidence was **entirely satisfactory**. The jury found it was honestly given and the situation is no different than if the insured had been struck by lighting or hit by a truck on May 15, 17, or 19, 1933.
> Id. (emphasis supplied).

16

Thus, the Court held that the insured had fully complied with the company's reinstatement procedures and that the policy was reinstated on May 4, the day that the insured completed the reinstatement application.  It is important to note the Court's reference to an insured's being struck by lightning or hit by truck.  Without question, had the <u>Froehler</u> insured been struck by lightning or hit by a truck after submission of his reinstatement application, the insurance company would be obligated to pay the proceeds.  In the context of reinstatement, a diagnosis with a brain tumor is no different than an accidental death.  So long as the company's procedures have been followed, the policy must be reinstated.

Just like the insurance company in <u>Froehler</u>, American General here seeks to deny a reinstatement that was properly made, according to the insurance company's own procedures.  There is no dispute that on April 26, 2007, Jorge honestly and fully complied with American General's reinstatement procedures, by completing the insurance company's questionnaire.  Likewise, he supplemented his responses on May 8, 2007 by providing a response to Question No. 4 on the Reinstatement Application.  That question inquired as to when Jorge had last seen his personal physician and the finding of that examination.  There is no suggestion by American General that the responses provided by Jorge at the time they were provided were not true and complete.  Under the governing statute, <u>N.J.S.A.</u> 17B:25-9, and under American General's own guidelines, Jorge's policy was properly reinstated on April 26, 2007.  Any risk of change in Jorge's health passed to the insurance company on that date.

Therefore, the policy was properly reinstated, according to the insurer's own terms and according to the Reinstatement statute, on April 26, 2007.

Accordingly, it is the position of the plaintiff that the insurance contract provided only that the insured respond to the questions in the Reinstatement Application. Nowhere in the insurance contract was there a requirement to update information initially provided in the application. Thus, Plaintiff's position is that the insurability of Jorge must be measured at the point in time he submitted his responses to the health questionnaire.

If the insurance contract did not identify the point in time when Jorge's insurability would be measured, then Jorge is entitled to have it measured at the point in time when he answered and submitted those responses to American General. If he was insurable then, and there is no suggestion that his responses were not truthful, and they were accepted by the insurance company as satisfactory, plaintiff is entitled to the life insurance benefits, regardless of when the policy is deemed reinstated.

Finally, we should note that plaintiff's argument with respect to the policy's failure to inform the policyholder as to when his insurability will be measured, and the purported obligation to update his application based upon any change in health, is an argument in the alternative to plaintiff's primary argument. Her primary argument is that upon submission of the Reinstatement Application, a binding contract is formed and the policy is reinstated as of that date. While the insurance company has the right to pass upon insurability and approve it, and has the right to receive the overdue premium, once those conditions are fulfilled, the reinstatement relates back to the date of initial submission of the Reinstatement Application.

# VII.

## AMERICAN GENERAL'S POSITION THAT REINSTATEMENT OCCURS ONCE THE MENDEZ CHECK CLEARS.

American General contends that the policy was not reinstated until Mendez's check cleared his account on May 24, 2007.  Here again, nowhere in the policy does it provide that reinstatement will not take place until final clearance of the insured's check.  Indeed, the reinstatement provision does speak in terms of reinstatement being "subject to" payment of the premium, i.e. the overdue premium with interest, however, the provision does not indicate that advance payment of the premium is a condition precedent to the reinstatement taking place.

The provision does require payment of the premium and here, payment was made after notice of the amount requested by letter dated May 10, 2007.  On May 14, 2007 Mendez paid the overdue premium.  That was all that was required to reinstate the policy, and upon payment, the reinstatement relates back to the time of the making of the reinstatement application by the insured.  See New York Life Insurance Co. v. Weiss, 32 A.2d 341 (N.J. E.&.A. 1943) (premium paid two (2) days after reinstatement application submitted, but reinstatement effective on date of submission of reinstatement application); Muckler v. Guarantee Fund Life Ass'n, 208 N.W. 787, 789 (S.D. 1926) (reinstatement relates back to the time of the application for reinstatement); Bowie v. Bankers Life Co., 105 F.2d 806, 808 (10th Cir. 1939) (the policy is reinstated and the restoration relates back to the time of the submission of the application for reinstatement); Froehler v. North American Life Ins. Co. of Chicago, 27 N.E.2d 833 (Ill. 1940 (reinstatement relates to time when statements were made on application for reinstatement).

19

Similarly, the reinstatement statute, <u>N.J.S.A.</u> 17B:25-9, contains no provisions suggesting that reinstatement occurs at the pint in time when the policyholder's check clears. On the contrary, the statute provides that the policy **will be reinstated** and that the reinstatement will take effect "**upon application therefor.**"

Of course, the issue of when reinstatement occurs is only relevant if Jorge's insurability is measured at the time Jorge's check cleared on May 24, 2007 such that he was obligated to advise the insurance company of his change in health after submission of his responses to the health questionnaire (the Reinstatement Application). If Jorge's insurability is measured at the point in time when he submitted his responses to the questionnaire, i.e. April 26, 2007, then whether the reinstatement occurs on May 24, 2007 or April 26, 2007 makes no difference because Jorge died on March 12, 2008. Clearly, the policy was reinstated by that date.

Plaintiff's point here is that the insurance company argues not just for reinstatement at the point in time when Jorge's check cleared (i.e. May 24, 2007), but also because the check did not clear until May 24, Jorge was somehow obligated to advise the insurance company of his change in health. Neither the insurance policy nor the governing statute, <u>N.J.S.A.</u> 17B:25-9, support American General's position that reinstatement occurs at the time the check clears. Also, neither the insurance policy nor the governing statute support the insurance company's position that Jorge's insurability should be measured at the time the check clears, or that Jorge was required to inform the insurance company of a change in his health.

# VIII.

## AMERICAN GENERAL'S POSITION THAT REINSTATEMENT DOES NOT TAKE PLACE UNTIL THE APPLICATION IS REVIEWED BY ITS UNDERWRITERS.

American General also argues that the policy could not be reinstated until its underwriters passed on his Reinstatement Application. American General wrote to Jorge on May 10, 2007 and informed him that the underwriting department had approved the application. (Certification of Michael Sepanski, dated March 1, 2010, Exhibit C). Thus, we know that Jorge, by submitting the Reinstatement Application, and providing truthful and complete responses to the questions, had established proof of insurability. Again, American General attempts to support its position that Jorge was obligated to amend his answers in the questionnaire up until American General's Underwriting Department approved the application.

But, the policy does not say that. The policy says that the insured must submit evidence of insurability "which is satisfactory to us." Nowhere in the policy does the reinstatement provision define the point in time when insurability will be tested.

Reinstatement of insurance is grounded in the reinstatement provision of the insurance contract itself. Here that contract does not define when insurability will be measured. In good faith, Jorge completed his responses to the questions in the Reinstatement Application on April 20, 2007 and those responses were transmitted on April 26, 2007 to American General. Since the policy did not define when "insurability" would be measured, Plaintiff is within her rights to assert that Jorge met the requirements of the policy by establishing that he was "insurable" on April 26, 2007, the date the written responses in the Reinstatement Application were submitted.

Similarly, the Reinstatement Statute, <u>N.J.S.A.</u> 17B:25-9, contains no provision suggesting that reinstatement occurs at the point in time when the underwriters review the application for reinstatement.   As with the American General position with respect to reinstatement at the time the Mendez check cleared on May 24, the reinstatement statute **<u>does not provide</u>** that reinstatement occurs at the point in time when the American General underwriters review and approve of the application.   On the contrary, again the statute provides that the policy will be reinstated upon written application therefor.

Of course the issue of when reinstatement occurs is only relevant if Jorge's insurability is measured at the point in time when American General's underwriters reviewed his application, i.e., May 10, such that he was obligated to advise the insurance company of his change in health after submission of his responses to the health questionnaire (the reinstatement application).   If Jorge's insurability is measured at the point in time when he submitted his responses to the questionnaire, i.e. April 26, 2007, then whether reinstatement occurs on May 10, 2007, when the underwriters approved the application for reinstatement, or reinstatement occurs on April 26, 2007, makes no difference because Jorge died on March 12, 2008.   Clearly, the policy was reinstated by March 12, 2008.

Plaintiff's point here is that the insurance company argues not just for reinstatement at the point in time when its underwriters approved the reinstatement (i.e. May 10, 2007), but also because the underwriters did not place their *imprimatur* on the reinstatement until May 10, Jorge was somehow obligated to advise the insurance company of his change in health.   Neither the insurance policy nor the governing statute, <u>N.J.S.A.</u> 17B:25-9, support American General's position that reinstatement occurs at the

22

time the underwriters approve of the reinstatement.  Also, neither the insurance policy nor the governing statute support the insurance company's position that Jorge's insurability should be measured at the time when the underwriters approve the reinstatement, or that Jorge was required to inform the insurance company of a change in his health.

# IX.

## PLAINTIFF'S RESPONSE TO AMERICAN GENERAL'S DISCUSSION OF THE *HIGGINBOTHAM* CASE

In its initial brief, American General attempts to distinguish and devalue the United States Supreme Court's decision in <u>Mutual Ben. Life Ins. Co. v. Higginbotham</u>, 95 <u>U.S.</u> 380 (1877).  <u>See</u> American General's brief at 28-29.  Tearing the High Court's words from their proper context, American General puts forth the notion that the Court's decision in <u>Higginbotham</u> actually supports the insurance company's claims—a notion that is directly contrary to what the Court held.

American General cites a portion of the Supreme Court's opinion where the Court discusses, **in hypothetical fashion**, whether an insured is under a continuous duty to make a full disclosure of his health to company until the company passes on the reinstatement application.  <u>See</u> American General's brief at 29.  American General conveniently omits the fact that the Supreme Court was indeed engaged in a hypothetical discussion, and ultimately held that there was **no continuous duty** on the part of the insured to notify the company of a change in health, after submission of the reinstatement application.  This Court is respectfully directed to the Supreme Court's opinion in <u>Higginbotham</u>.  A careful and honest reading of the Supreme Court's words will put to rest American General's attempt at obfuscation.

# X.

## AMERICAN GENERAL'S USE OF PRIOR DRAFTS OF PLAINTIFF'S BRIEF

In its Reply Brief, and attached certification, American General submits to this Court excerpts of prior **drafts** of Plaintiff's briefs. Pursuant to an order from the Magistrate, counsel exchanged briefs so that each side would have a general idea of the arguments and positions of the other. Now, American General attaches and cites portions of Plaintiff's prior drafts in an attempt to paint Plaintiff's position as somehow inconsistent. See American General's Reply Brief, pp. 6-8.

This Court should be aware that Plaintiff's position has been consistent throughout this litigation. Plaintiff has always stated that her is position is that Jorge's policy was reinstated on April 26, 2007—the date of the submission of the application. American General makes much of the fact that Jorge submitted a supplemental answer, on May 8, 2007 to the insurance company. On May 8, Jorge filled in an answer that he had inadvertently omitted on April 26, i.e. Jorge provided the date of his last physical and stated that the findings of that physical were normal. There is absolutely no dispute that the answers Jorge provided on April 26, and the supplement provided on May 8, were completely truthful and correct. Nothing in any prior draft of Plaintiff's briefs contradicts or is conflict with Plaintiff's position.

Therefore, this Court should ignore American General's attempt to create, out of whole cloth, inconsistencies where none exist.

# XI.

## RESPONSES TO CERTAIN CLAIMS MADE BY AMERICAN GENERAL

American General makes the claim that Plaintiff has stipulated that reinstatement occurred on May 24, 2007. This claim is totally misleading and inappropriate.   The stipulation, from the Joint Stipulation of Facts, reads as follows:

> 40. Based upon the answers submitted by Mendez in
> the Reinstatement Application, American General
> reinstated the policy on May 24, 2007.

Given that American General did not control reinstatement as such was mandatory, all Plaintiff was stipulating to was the position that has been advanced by American General, that, from its perspective (correct or not), the policy was reinstated on May 24, 2007.   Plaintiff's position has been that the policyholder controlled reinstatement, and that reinstatement occurred, as a matter of law, upon the submission of the reinstatement application on April 26, 2007 by Jorge to American General.  Plaintiff never stipulated to the correctness of the American General position.   Plaintiff only stipulated that American General had taken that position.

What American General is engaged in here is a "game of semantics."  It well recognizes that one of the issues separating the insured and the insurer is the effective date of the reinstatement, i.e. whether that be as suggested by the Plaintiff, April 26, 2007, or as suggested by American General, May 24, 2007.  Plaintiff only stipulated to what was obvious: that American General believed that it had the right to control reinstatement, and that pursuant to that supposed right, American General contends that reinstatement occurred on May 24, 2007.

For the reasons expressed herein, American General **never had the right** to control reinstatement. Thus, the stipulation that "American General reinstated the policy on May 24, 2007" is nothing more than a stipulation to American General's own position.

Next, American General makes much of paragraph 41 of the Joint Stipulation of Facts where Plaintiff agrees that if the insurance company knew of Jorge's change in health, it would not have reinstated the policy. This point, and any argument resting thereon, is totally without merit. The insurance company here has known from day one of this action that the issue here is: **on what date did reinstatement occur, such that the risk of a change in health passes to the insurance company?** Stated differently, at what point in time should Jorge's insurability be measured, at the time he completed the health questions on the reinstatement application; at the time when American General's underwriters reviewed the application; or when Jorge's check cleared?

Plaintiff contends, with great support, that Jorge's insurability and reinstatement must be measured from April 26, 2007—the date on which Jorge submitted the truthful and correct reinstatement application. Plaintiff's concession that American General would not have reinstated the policy had its underwriters been informed of Jorge's brain tumor in passing upon his insurability, is nothing more than a concession to the obvious. If Jorge's insurability is measured from a later point in time, i.e. after Jorge learned of his change in health (diagnosis of a brain tumor), undoubtedly American General would not have reinstated the policy. The issue is not whether American General would have reinstated the policy if it was aware of the brain tumor. Rather, the question presented is thus: at what point is Jorge's insurability measured such that the policy is reinstated, and the risk in a change in his health is transferred to American General? Plaintiff asserts that

the risk in a change in his health is transferred to American General?  Plaintiff asserts that Jorge's insurability should be measured on April 26, 2007, before he was diagnosed with the brain tumor.  American General asserts that the insurability should be measured from May 10, or May 24, 2007, after Jorge was diagnosed with the brain tumor.

The Court should reject American General's semantic games.  American General's invocation of these paragraphs from the Joint Stipulation of Facts is silly and should not have been made.  American General is well aware of Plaintiff's position, as has been from the outset of this litigation.  The parties are well beyond the point of "gotcha" schemes, and should set forth their respective positions with honesty and candor.  Anything less does a disservice to the parties and is an affront to this Court.

## **CONCLUSION**

For the foregoing reasons Plaintiff Debby Mendez respectfully requests that the Court issue an Order that Defendant American General pay the $1.2 million proceeds, plus interest, to Plaintiff.

Respectfully submitted,

Garrity, Graham, Murphy, Garafalo & Flinn

By: _____
Naveen M. Nadipuram, Esq.

On the Brief:
Francis X. Garrity, Esq.
Naveen M. Nadipuram, Esq.

Date: May 19, 2010