UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBBY MENDEZ,**<br><br>    Plaintiff,<br><br>v.<br><br>**AMERICAN GENERAL LIFE INSURANCE COMPANY,**<br><br>    Defendant. | Civil Action Number: 2:09-1155<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

### MEMORANDUM OPINION

In this action, Plaintiff Debbie Mendez seeks payment of benefits under Jorge Mendez's, that is, her late husband's, life insurance contract issued by Defendant American General Life Insurance Company ("American General"). Before the Court is American General's motion for summary judgment seeking a determination that the contract was void based on concealment and misrepresentations. American General has also brought a purported counter-claim for insurance fraud against Debbie Mendez and seeks summary judgment on that claim. Plaintiff has moved for summary judgment on its claim for benefits under the contract. Material facts are not in dispute; the case, therefore, is ripe for summary judgment. No oral argument was held. Fed. R. Civ. P. 78.

For the reasons elaborated below, Plaintiff's motion for summary judgment will be **DENIED**. Defendant's motion for summary judgment will be **GRANTED** in part, and **DENIED** in part. The Court finds that the contract for insurance is void ab initio, but will deny (and, indeed, dismiss) the purported counter-claim. Furthermore, given its finding that the contract is void ab initio, Defendant must pay (with interest) the estate of Jorge Mendez all premiums paid since the purported reinstatement.

### I.   BACKGROUND

On September 26, 2006, Jorge Mendez submitted an application for term life insurance to American General. On December 6, 2006, American General issued a policy (the "Policy") to Jorge Mendez. On April 15, 2007, American General contacted Jorge

Mendez and indicated that the Policy was terminated for failure to pay premiums due. Although terminated, the policy provided for reinstatement.

On April 20, 2007, Jorge Mendez applied for, filled out, and signed his reinstatement application. Among other questions, the reinstatement application asked whether he had been diagnosed or treated for "cancer;" he answered "no." He gave similar answers in regard to "tumor" and diseases of the "brain." Plaintiff Debby Mendez was present when Jorge Mendez filled in this form. Jorge Mendez failed to answer a single question, that is, Question Number 4, which asked him to state the "[d]ate, reason, findings and treatment at [his] last visit" to his "personal physician."

On April 24, 2007, Jorge Mendez visited Dr. Dokko who recommended that Jorge Mendez undergo an MRI. He did so on April 27, 2007, and an MRI report dated April 27, 2007, revealed a mass within the left frontal lobe of Jorge Mendez's brain.

On April 26, 2007, Jorge Mendez's (incomplete) reinstatement application was submitted to American General by PGA Financial.

On April 29, 2007, Jorge Mendez learned of the results of the MRI. On April 30, 2007, Jorge Mendez was evaluated by Dr. Hubschmann, who indicated that Jorge Mendez had a large tumor, and recommended radical resection. On May 2, 2007, Mendez was seen by Dr. Gutin. He diagnosed Mendez as having glioblastoma, and recommended a biopsy of the mass.

On May 2, 2007, American General notified Jorge Mendez that his application was incomplete. On May 4, 2007, Mendez met with Dr. Hodaosh, who recommended surgery to remove the tumor. On May 7, 2007, Jorge Mendez dated and initialed his response to the unanswered question. Again, the question inquired as to the "Date, reason, findings and treatment at [his] last visit" to his "personal physician". He answered: "2/8/06 physical/no findings[.] all normal JM 5/7/07." Plaintiff was present when Jorge Mendez answered this question.

On May 8, 2007, Jorge Mendez forwarded his answer to Question Number 4 to American General. Also, on May 8, 2007, Plaintiff scheduled surgery for her husband. On May 14, 2007, Jorge Mendez met with Dr. Dokko to obtain clearance for an upcoming biopsy. Also, on May 14, 2007, Debbie Mendez signed the check to pay past due premiums. The check was mailed to Defendant on or about May 14, 2007.

On May 17, 2007, Mendez underwent surgery to remove the mass identified in the MRI. After the procedure, he was told that the mass was a brain tumor. On May 18, 2007, American General received the past due premiums.

Neither Jorge Mendez's April 26, 2007 initial application, nor his May 8, 2007 follow-up submission discussed his meetings with Dr. Dokko or the other doctors he visited after visiting Dr. Dokko, nor the results they told him. On May 24, 2007, American General reinstated the policy based on his April and May answers and the payment of premiums.

Jorge Mendez died of a brain tumor on March 12, 2008. Debby Mendez is the primary beneficiary of the $1.2 million policy.

Plaintiff contends that each of the material representations made by Jorge Mendez was true and accurate *at the precise time each representation was made*. American General refuses to pay based upon its contention that Jorge Mendez made material representations in his reinstatement application upon which it relied. And this law suit followed.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

## III.   ANALYSIS

*Jurisdiction and Choice of Law*. Plaintiff is a citizen of New Jersey; Defendant is a Texas corporation with a principal place of business in Texas. The Court has diversity jurisdiction of this contract dispute. *See* 28 U.S.C. § 1332. Furthermore, the parties do not dispute that New Jersey substantive law controls this dispute, and cite, on the whole, only New Jersey case law. Therefore, New Jersey substantive law applies here.

*The Reinstatement Application and the Supplemental Filing*. As explained, on April 20, 2007, Jorge Mendez filled out his reinstatement application. It is not disputed that at the time and date he filled out this application, the answers given were truthful as he

3

understood them. It is also not disputed that the application was incomplete at this time. On May 7, 2007, Jorge Mendez made a supplemental filing to his reinstatement application: he answered Question Number 4. It is not disputed that the answer given to this precise question was truthful at the time he supplemented his application. However, by May 7, 2007, the information he gave in his original application, on April 20, 2007, was no longer consistent with what he knew at the time he supplemented his application. By the later date, several doctors and doctors' reports had informed Jorge Mendez that he had a brain tumor which required surgery. Moreover, Defendant's decision to reinstate Jorge Mendez's policy relied upon the information supplied by Jorge Mendez in his reinstatement application. *Cf.* Joint Stip. ¶ 41 ("If American General had known of the change in the health of Jorge Mendez, it would not have reinstated the policy."). As a matter of New Jersey law, it seems clear that if this application had not been one for reinstatement, but had been an initial application for insurance, Mendez would have had a continuing common law duty to update his application and to inform the Defendant of changes in his condition during the application process, that is, prior to the insurance company issuing the insurance contract. This common law duty under New Jersey law exists notwithstanding that each and every question was answered truthfully at the precise moment each question was answered. *See, e.g.*, *Weir v. City Title Ins. Co.*, 308 A.2d 357, 360-61 (N.J. Super. Ct. App. Div. 1973); *see also, e.g., Fidelity & Deposit Co. of Md. v. Hudson United Bank*, 653 F.2d 766, 772 (3d Cir. 1981) ("[U]nder New Jersey law, when events occur between the submission of an application for insurance and the effective date of the policy that cause information contained in the application to be untrue, the insured has an obligation to disclose this fact to the insurance company." (citing *Weir v. City Title Ins. Co.*, *supra*)); *id.* at 722 ("[I]t is essential to determine whether the events that transpired between January 1976, when the application was completed, and March 21, 1976, when the policy was issued, triggered a duty on the part of the Bank to supplement the application.").

*Common Law Duty in the Context of Reinstatement*. The precise question here is whether the common law duty explained above also applies in the context of reinstatement, as opposed to when a contract for insurance is initially issued. The parties have pointed to no on-point decision of any New Jersey state court answering this precise question under New Jersey law. Notwithstanding the absence of wholly on-point state authority, this Court predicts that if this question were posed to the New Jersey Supreme Court that court would hold that the same common law duty applies. *See Covington v. Continental General Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (explaining that a federal court's role in exercising diversity jurisdiction is to predict how the relevant state Supreme Court would decide). Indeed, the United States Court of Appeals for the Third Circuit has held that "New Jersey has adopted the view that the reinstatement clause of a[] [lapsed] insurance policy contemplates a new contract of insurance." *Glezerman v. Columbian Mut. Life Ins. Co.*, 944 F.2d 146 (3d Cir. 1991) (citing *N.Y. Life Ins. Co. v. Weiss*, 32 A.2d 341, 342 (N.J. 1943)). The same policy reasons that justify the common law duty imposed upon an applicant for insurance to be

forthcoming in an initial application would seem to equally apply here: in the reinstatement context, which is in itself "a new contract [for] insurance." *Id*. Indeed, this Court has held:

> The mere fact that decedent was alive and insurable as of the time the application was *executed* is of no consequence. The decedent must have been insurable at the time of the application, through the time it was submitted to and reviewed by [the insurer], and on the effective date of reinstatement in order for reinstatement to be effective. *One cannot insure oneself against a risk that has already occurred*.

*Russo v. Guardian Ins. & Annuity Co. Inc*., 1997 WL 1037958 (D.N.J. Aug. 15, 1997) (emphasis added) (Brown, J.), *aff'd*, 9 F.3d 1353 (3d Cir. 1998) (NOT PRECEDENTIAL).[1] The Court knows no policy reason to justify treating reinstatements differently from an initial application and so predicts the Supreme Court of New Jersey would hold that it applies in this context too. Here, the information in Jorge Mendez's initial application was true as he knew it when executed, but by the time Jorge Mendez completed the informational component of the application (that is, Question Number 4), the information that he had originally submitted was no longer accurate.[2] This new information was material to the Defendant's decision to reinstate the contract. In these circumstances, it would appear that the Defendant is entitled to have the contract for reinstatement rescinded. *See Weiss*, 32 A.2d at 342.

      Plaintiff's position is that the contract was formed on April 26, 2007 when PGA Financial submitted Jorge Mendez's initial application to the insurer. If the contract were formed as early as that time, then, arguably, reinstatement (assuming contract formation and reinstatement are the same) would have occurred prior to Jorge Mendez's discovering the material information that was inconsistent with his initial application. Arguably, in those circumstances Mendez would not have a continuing duty to notify the insurer of changed circumstances because the contract would already have "issued" (again, assuming issuance and contract formation are substantially identical). The argument fails because the insurer's "offer" to reinstate was contingent both on a *complete* application and on the payment of all

---

[1] Plaintiff cites *Mut. Ben. Life Ins. Co. v. Higginbotham* 95 U.S. 380 (1877), as contrary authority. This case did not arise under New Jersey law; indeed, it cites no New Jersey case law. Moreover, it was decided well prior to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), at a time when the federal courts were making general federal common law in regard to contract law and other state law matters. As such, it carries little persuasive force in regard to predicting how the New Jersey Supreme Court would rule on the issue before this Court.

[2] Plaintiff argues that a contract for reinstatement relates back to the act of acceptance of by the insured. Even if this is a correct statement of law, it does not negate the common law duty to update the informational component of the application until such time as the application is completed by the applicant.

premiums due prior to reinstatement. The submission of the completed application and the payment of premiums occurred well after April 26, 2007, that is, after Jorge Mendez was informed of his serious health conditions.

*The Insurer's Fraud Claim Against Plaintiff Debbie Mendez is Dismissed*. Defendant moves for summary judgment on its counter-claim. In its opening brief, Defendant seeks damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A 17:33A-1 (2010), and as a matter of common law fraud against Debby Mendez. Liability under the statute may be established by "presenting any knowingly false or misleading statement in an insurance application … or [by] knowingly assisting, conspiring with … any person to violate any of the Act's provisions." *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1245 (N.J. 2006) (citing N.J.S.A 17:33A-4). Defendant points to two facts to establish liability: first, that Debby Mendez signed and mailed the check for the overdue premiums, and second, that Debby Mendez was "present" when Jorge Mendez completed his reinstatement application. These facts do not appear to be sufficient under the statute. The fact that Debby Mendez was in the same room does not mean she had concrete knowledge of the contents of Jorge Mendez's application answers. Also signing a check does not, on its face, appear to be a "false or misleading statement in an insurance *application*." Likewise, common law fraud requires a false representation by the Defendant. As no such false representation by Debby Mendez is put forward, the application for summary judgment against her fails. Moreover, in Defendant's pleadings, Count I (misrepresentation) and Count II (fraud) alleges wrongdoing, but the allegations are directed *only* against Jorge Mendez (who is not a party to this action). *Debby Mendez is not even mentioned*. Notice pleading requires that a Defendant be put on fair notice of the allegations against her. As *no* allegations amounting to statutory or common law fraud are asserted against Debby Mendez in the pleadings, these claims are dismissed.

## IV.   CONCLUSION

For the reasons elaborated above, Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED** in part, and **DENIED** in part. The Court finds that the contract for insurance is void ab initio, but denies (and, indeed, dismisses) the purported counter-claim. Finally, given its finding that the contract is void ab initio, Defendant is directed to pay (with interest) the estate of Jorge Mendez all premiums paid since the purported reinstatement.

This action is terminated. An appropriate order accompanies this memorandum opinion.

s/ William J. Martini  
**DATE: November 29 2010**                                                   **William J. Martini, U.S.D.J.**